COMMUNICATIONS WORKERS
OF AMERICA, AFL–CIO, et
al., Plaintiffs

v.

AMERICAN TELEPHONE &
TELEGRAPH CO., et al.,
Defendants.

Civ. A. No. 91–2745.

United States District Court,
District of Columbia.

March 22, 1993.

Gerard C. Boyle, Boyle, Tyburski & Toll, Patrick M. Scanlon, Gen. Counsel, Communications Workers of America, AFL–CIO, Washington, DC, for plaintiff.

Marc E. Manly, Sidley & Austin, Washington, DC, for defendant.

*MEMORANDUM OPINION
AND ORDER*

SPORKIN, District Judge.

Plaintiffs, Communications Workers of America, AFL–CIO (hereinafter "CWA"), Michael Mannon, and Lyle Wingate brought

this action against Defendants American Telephone & Telegraph Company ("AT & T") and AT & T Pension Plan (the "Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA"). CWA is the collective bargaining agent representing AT & T employees. Michael Mannon and Lyle Wingate are employees of AT & T and covered by the Plan. The crux of Plaintiffs' Complaint involves the effect of AT & T's acquisition of NCR Corporation on the pension benefits of AT & T employees who were hired by NCR after the acquisition. Before the Court is Defendants' Motion for Summary Judgment. For the reasons discussed below, Defendants' motion is denied and partial summary judgment is entered in favor of Plaintiffs.

## I. *Background.*

In 1991, AT & T acquired the stock of NCR Corporation. As a result, NCR became, and continues to be, a wholly-owned subsidiary of AT & T. As part of the merger agreement between AT & T and NCR, most of the computer-related operations and servicing formerly done at AT & T were shifted to NCR. AT & T employees affected by the merger were given three options:

(1) AT & T would assist such employees in seeking employment at NCR;[1]

(2) For those employees who wished to remain with AT & T or an affiliated company, AT & T attempted to transfer such employees to other divisions within AT & T or its affiliates;[2]

(3) Employees who were eligible to receive service pensions under the Plan, but who were not transferred to another division at AT & T (or an AT & T affiliate) or hired by NCR, could begin to receive their service pension and other retirement benefits.

In effecting the merger, AT & T and NCR signed an "Interchange Agreement", which covers the continued eligibility of former AT & T employees hired by NCR under the AT & T Pension Plan. This Agreement provides for the portability of service credit between the two companies. That is, upon retirement from NCR, a former service-pension-eligible AT & T employee will be eligible to receive whatever AT & T pension she or he had earned as of the date she or he left AT & T and moved to NCR; years of service with NCR will be treated as years of service with AT & T for purposes of determining eligibility to receive a pension under the AT & T Plan. NCR has a separate pension plan for its employees, and the former AT & T employees will also begin to accumulate pension benefits as NCR employees. Under the Interchange Agreement, former AT & T employees hired by NCR cannot begin to receive any Plan benefits to which they would be entitled if they retired or otherwise stopped working for AT & T.

In their Motion for Summary Judgment, Defendants first argue that CWA lacks standing to assert ERISA claims and that Plaintiffs failed to exhaust the internal remedies afforded under the Plan and the governing collective bargaining agreements. Regarding the substance of Plaintiffs' claim, Defendants argue that AT & T's actions regarding the pension benefits under the Plan were valid. The Court will address each of these arguments in turn.

## A. *Standing*

Three classes of persons may commence an action under section 502 of ERISA: (1) A participant or beneficiary of the pension plan; (2) the Secretary of Labor; (3) a fiduciary. *See Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2d Cir. 1991). The statute does not specifically list collective bargaining agents as a party authorized to commence such an action. *See* 29 U.S.C. § 1132(a). Therefore, Defendants argue, the express language of the statute pre-

---

**1.** AT & T employees were not guaranteed employment at NCR, but NCR and AT & T cooperated in facilitating such employees' application process. Such employees were allowed to continue working at their AT & T jobs until NCR finalized its hiring decisions.

Approximately 500 employees, including Plaintiff Wingate, fell into this category and were hired by NCR.

**2.** Approximately 550 such employees, including Plaintiff Mannon, transferred to positions within other divisions of AT & T under this option.

cludes CWA from asserting a claim under ERISA.

The Court does not agree. The test for representational standing set forth in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), is applicable to CWA's standing to sue on behalf of its members under ERISA. In *Hunt* the Supreme Court held that an association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.,* 432 U.S. at 342, 97 S.Ct. at 2441.[3]

In the instant case, the first two elements of this test are clearly met. CWA's members would have standing to assert the ERISA claims raised by CWA and the interests CWA seeks to protect are fundamental to CWA's purpose as collective bargaining agent.

Regarding the third element, Defendants argue that the participation of individual members of CWA is necessary because some employees stand to lose if CWA prevails in its claim. At this point in the proceedings, the Court does not find that any employees will be harmed if the position advanced by CWA prevails. Moreover, while a binding contract prohibits a party from lessening the benefits conferred by the contract on the other party, there is nothing which precludes one party from providing the contract beneficiaries more than is required under the contract. Thus, AT & T is free to provide more pension benefits under the AT & T–NCR Interchange Agreement to employees covered under the Plan than would have been provided by AT & T prior to the merger. What AT & T cannot do is to provide any employee less benefits than the employee otherwise would have been entitled to receive. Accordingly, the Court finds that CWA has standing to assert its ERISA claims.[4]

**B. *Failure to Exhaust Internal Remedies.***

Defendants next argue that Plaintiffs failed to exhaust the internal remedies provided under the Plan and failed to submit their claims to arbitration, as required by the collective bargaining agreements.

**1. *Administrative Remedies Afforded under the Plan.***

■ Plaintiffs contend, and Defendants do not dispute, that Plan administrators consistently have interpreted the Plan to deny claims such as those raised by Plaintiffs in this case. Under such circumstances, the Court agrees that to require Plaintiffs to pursue the remedial procedures provided under the Plan would be futile. Therefore, the Court will exercise its discretion not to require that Plaintiffs do so. *See Springer v. Wal–Mart Associates Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990).

**2. *Mandatory Arbitration.***

■ Paragraph 19.30 of the collective bargaining agreement provides that AT & T cannot make any change in the Plan which would reduce or diminish the benefits or privileges provided employees represented by CWA without the Union's consent. Paragraph 19.40 provides that "[a]ny dispute involving the true intent and meaning of Paragraph 19.30 may be presented as a grievance and ... submitted to [ ] arbitration ..."

Not only is Paragraph 19.40 permissive (the dispute *may* be so submitted), but the same paragraph goes on to state: "However, nothing herein shall be construed to subject the Employee Benefit Plans (or their succes-

**3.** Defendants' reading of the case law on standing would mean that, where Congress expressly provides for civil enforcement of statutory rights, a union or other organization could never assert a claim on behalf of its members unless Congress expressly granted both organizations and individuals standing to do so. Such a view is contrary to the theory behind representational standing established by the case law.

**4.** If, in the course of further proceedings, the Court should perceive a conflict between the interests of different groups of employees covered by the Plan, the Court will consider appropriate measures at that time.

sors) or their administration or the terms of the proposed change(s) in the Plan(s) to arbitration".[5] The Court agrees with Plaintiffs that this provision excuses compulsory submission of the issue involved in this suit to arbitration under the collective bargaining agreements.[6]

### C. Merits

■ The AT & T Plan, by its terms, provides for the suspension of benefits of employees who begin work with a company that has an Interchange Agreement with AT & T. Defendants argue that the Interchange Agreement between AT & T and NCR is valid, and as such is dispositive of Plaintiffs' complaint. Defendants point to Section 8, Paragraph 1 of the AT & T Plan, which states that AT & T can enter into an Interchange Agreement "with any Associated or Allied Company or any Former Affiliate ..."[7] Defendants argue that NCR is an "Associated or Allied Company" of AT & T, and therefore that the Interchange Agreement with NCR at issue in this case is expressly authorized under the Plan.

Defendants also argue that, because of the service portability provision of the Interchange Agreement with NCR, AT & T employees hired by NCR have suffered no loss of pension benefits as a result of the merger and their subsequent relocation to NCR.

Plaintiffs dispute the validity of the Interchange Agreement signed by AT & T and NCR. Plaintiffs point out that "Interchange Agreement" and "Associated or Allied Company" are terms of art, each with a specific meaning as defined in the Plan. Thus, the fact that AT & T negotiated an interchange agreement with NCR does not mean that the agreement is an "Interchange Agreement" for purposes of the Plan. Similarly, that NCR has become a wholly-owned subsidiary of AT & T does not necessarily make it an

"Associated or Allied Company" for purposes of the Plan.

Defendants' reliance on the language in Section 8, Paragraph 1 of the Plan, which describes an employer's obligations under an Interchange Agreement, is misplaced. Section 2 of the Plan defines various terms. "Interchange Agreement" is defined to mean an agreement "among one or more Participating Companies and one or more Former Associated or Allied Companies or Former Affiliates ..." "Former Associated or Allied Company" is defined to mean Southern New England Telephone Company or Cincinnati Bell, Inc.; "Former Affiliate" is limited to NYNEX Corporation, Bell Atlantic Corporation, BellSouth Corporation, American Information Technologies Corporation, Southwestern Bell Corporation, U.S. West, Inc., Pacific Telesis Group, Inc., or any subsidiary of any such company, and Bell Communications Research, Inc.

Defendants' interpretation of the Plan requires that the phrase "Associated or Allied Company" used in Section 8 has a different, and broader, meaning than the term "Former Associated or Allied Company" defined in Section 2, in order to conclude that NCR is such an Associated or Allied Company. However, upon reviewing the Plan, it is clear to the Court that the phrase "Associated or Allied Company" used in Section 8 is synonymous to the phrase "Former Associated or Allied Company" defined in Section 2. The Court finds the Plan to be clear on this point.

Several factors are important to the Court's conclusion. The Plan does not define "Associated of Allied Companies". Only "Former Associated or Allied Companies" is defined in Section 2 of the Plan. Moreover, Section 2 of the Plan expressly limits "Interchange Agreement" to include

an agreement among one or more Participating Companies and one or more *Former* Associated or Allied Companies or

---

5. *See* Agreement By and Between Certain Business Units and Divisions of AT & T and CWA, Effective May 31, 1992, Exhibit 2, Attachment A of Defendants' Memorandum in Support of Motion for Summary Judgment.

6. In his deposition, AT & T's bargaining agent agreed with this interpretation. *See* Deposition of Charles L. Brumfield, Exhibit H to Plaintiffs'

Opposition to Defendants' Motion for Summary Judgment, at 33–34.

7. *See* AT & T Pension Plan, Section 8, Paragraph 1, attached at Exhibit 1, Attachment A to Defendants' Memorandum in Support of Motion for Summary Judgment.

Former Affiliates ... which provides for the portability of benefits ...[8]

The Plan's limiting definitions of "Former Associated or Allied Companies" and "Former Affiliates" are noted above.

There is nothing in the Plan to support Defendants' contention that additional companies, not specifically named in the Plan, can qualify as an "Associated or Allied Company". Indeed, such a reading would substantially change the contractual landscape agreed upon by CWA and AT & T in the Plan. Under the Defendants' view, AT & T would be permitted to execute an Interchange Agreement with any newly-acquired company; this would undermine the protections CWA bargained for in specifically limiting the companies with which AT & T can negotiate an Interchange Agreement under the Plan. By limiting the definition to affiliates in existence at the time the Plan was agreed upon, CWA ensured it knew the extent of the benefits AT & T employees would be entitled to receive from such affiliated entities.

Finally, Plaintiffs contend that they are harmed by Defendants' actions. For example, for those former AT & T employees now working at NCR, the level of their pension benefits under the AT & T Plan are frozen at the time their employment with AT & T is terminated, even if their credited years of service are not. The fact that former AT & T employees hired by NCR will begin to accumulate pension benefits under NCR's pension plan does not necessarily make them whole.

Plaintiffs did not file a summary judgment motion in this case. However, in certain limited circumstances, a district court may issue summary judgment on its own motion. "For example, *sua sponte* summary judgment is appropriate where one party moves for summary judgment and, after the hearing, it appears from all the evidence presented that there is no genuine issue of material fact and the *non-moving* party is entitled to judgment as a matter of law." *Portsmouth Square v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir.1985).

The coverage and effect of the AT & T–NCR Interchange Agreement as it pertains to CWA's members is pivotal in this case. Because the Court finds that the AT & T–NCR Interchange Agreement cannot be construed to extinguish or reduce the benefits of employees represented by CWA, the Court will deny Defendants' Motion for Summary Judgment and will grant partial summary judgment in favor of Plaintiffs on the question of the Agreement's impact on employees represented by CWA and will enter a declaratory judgment that the Interchange Agreement signed by NCR and AT & T cannot adversely effect such employees.

What remains to be decided in this case is what relief Plaintiffs are entitled to at this time. The Court will set a hearing at which the parties are to address this issue.

An appropriate order accompanies this Opinion.

### ORDER

Upon consideration of Defendants' Motion for Summary Judgment in the above-captioned proceedings and Plaintiffs' Opposition thereto, and after hearing oral argument from counsel for both sides, for the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED that Defendants' Motion for Summary Judgment is denied; it is

FURTHER ORDERED that partial summary judgment is entered in favor of Plaintiffs; and it is

DECLARED that the Interchange Agreement signed by American Telephone & Telegraph Company and NCR Corporation under the AT & T Pension Plan cannot be interpreted to allow Defendants unilaterally to extinguish or reduce the rights, benefits or entitlements conferred by the AT & T Pension Plan on employees represented by Plaintiff Communications Workers of America; and it is

FURTHER ORDERED that a hearing will be held on March 31, 1993 at 10:00 a.m.

8. *See* Section 2, Paragraph 10 of the Plan (emphasis added).

to determine to what further relief Plaintiffs are entitled.