**COMMUNICATIONS WORKERS OF AMERICA; Lyle Wingate, Appellees,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY; American Telephone and Telegraph Pension Plan, Appellants.**

No. 93–7060.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1994.

Decided Nov. 22, 1994.

---

H. Curley. Christopher R. Drahozal entered an appearance.

James B. Coppess argued the cause, for appellees. With him on the brief, was Gerard C. Boyle.

Before: EDWARDS, Chief Judge, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

In this case, we reaffirm the familiar principle that, barring exceptional circumstances, parties aggrieved by decisions of pension plan administrators must exhaust the administrative remedies available to them under their pension plans before challenging those decisions in court. We also reaffirm the well-established principle of labor law that disputes subject to mandatory arbitration under a collective bargaining agreement may not be brought to court in lieu of contractual arbitration procedures. We consider these principles critical to the orderly administration of our federal pension and labor laws. Because the District Court did not give proper weight to these principles, we reverse in part and remand in part.

This case involves a dispute over whether certain former employees of the American Telephone and Telegraph Company ("AT & T") were improperly denied pension benefits under the AT & T Pension Plan ("Plan"). As a result of a business reorganization precipitated by the 1991 merger of AT & T and NCR Corporation ("NCR"), a number of AT & T employees went to work for NCR. Pursuant to an agreement between AT & T and NCR, appellants AT & T and the Plan determined that certain employees who left AT & T for NCR would be ineligible to receive pension benefits under the Plan until after they ceased working for NCR. When Plan administrators refused to pay pension benefits to several such employees, appellees Communications Workers of America ("CWA"), the employees' collective bargaining representative, and Lyle Wingate ("Wingate"), an affected employee, brought suit in

Marc E. Manly argued the cause, for appellants. With him on the briefs, was John

District Court under section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a) (1988), and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 (1988), claiming that the denial of benefits violated the terms of both the Plan and the collective bargaining agreement ("CBA") between CWA and AT & T.

The District Court denied appellants' motion for summary judgment and, *sua sponte,* granted summary judgment for appellees on both the ERISA and LMRA claims. In so doing, the District Court found, *inter alia,* that appellees' failure to exhaust administrative remedies under the Plan was not a bar to their ERISA claim because pursuit of such remedies would have been futile. The District Court also ruled that appellees' failure to seek arbitration of this dispute did not bar their LMRA claim because the dispute was not subject to mandatory arbitration under the CBA. *CWA v. AT & T,* 828 F.Supp. 73, 75–77 (D.D.C.1993).

On appeal, appellants raise a number of challenges to the District Court's judgment. We need not reach most of these issues, however, for we find two to be dispositive. We first hold that the District Court abused its discretion by not requiring appellees to exhaust administrative remedies under the Plan prior to bringing suit under section 502 of ERISA. Contrary to the District Court, we find no basis for concluding that exhaustion would have been futile. We also hold that the District Court erroneously found that it was unnecessary for CWA to pursue grievance and arbitration procedures under the CBA with respect to the employees' breach of contract claim. On this point, we find that the contract claim is subject to mandatory and binding arbitration under the parties' CBA; accordingly, CWA could not pursue this claim under section 301 of the LMRA in lieu of arbitration.

## I. BACKGROUND

### A. *The AT & T Pension Plan and the Collective Bargaining Agreement*

At the heart of the parties' dispute in this case is a disagreement over the proper interpretation of both the Plan and the CBA. The Plan is a pension plan for non-management employees of AT & T and is qualified under section 401 of the Internal Revenue Code, 26 U.S.C. § 401 (1988 & Supp. V 1993). In accordance with ERISA, the Plan provides generally that any employee who satisfies certain age and service requirements and who elects to "retire[ ] from active service" with AT & T or its affiliates or subsidiaries shall be eligible to receive a service pension from the Plan. Plan § 4, ¶ 1(a), *reprinted in* Joint Appendix ("J.A.") 204. Under the Plan, however, a pension-eligible employee who leaves active service with one AT & T company to accept employment with another "Participating Company," or immediate reemployment by a company with which AT & T has an "Interchange Agreement," may not receive pension payments during the period of employment with such company. *Id.* § 4, ¶ 6(a), *reprinted in* J.A. 206. The Plan defines "Interchange Agreement" as an agreement "among one or more Participating Companies and one or more Former Associated or Allied Companies or Former Affiliates." *Id.* § 2, ¶ 10, *reprinted in* J.A. 189. The terms "Former Associated or Allied Company" and "Former Affiliate" are defined to mean certain former Bell system companies and their subsidiaries, but do not include NCR. *Id.* § 2, ¶¶ 2, 7, *reprinted in* J.A. 185, 186–87. The term "Participating Company," which means AT & T or any AT & T subsidiary which decides to participate in the Plan, also does not include NCR. *See id.* § 2, ¶ 16, *reprinted in* J.A. 191–92.

The CBA between AT & T and CWA contains several provisions relating to the Plan. Article 19.30 of the CBA provides that AT & T cannot make any "change . . . in the Plan which would reduce or diminish the benefits or privileges provides . . . to employees . . . without [CWA's] consent." CBA Art. 19.30, *reprinted in* J.A. 262. Article 19.40 provides that "[a]ny dispute involving the true intent and meaning of [Article] 19.30 may be presented as a grievance and . . . submitted to . . . arbitration. . . . However, nothing herein shall be construed to subject the . . . Plans (or their successors) or their administration or the terms of the proposed

change(s) in the Plan(s) to arbitration." *Id.* Art. 19.40, *reprinted in* J.A. 262.

Both the Plan and the CBA provide extensive administrative remedies for the resolution of disputes arising under their respective provisions. The Plan establishes a clear framework for the determination and appeal of employee benefit claims. *See* Plan § 3, *reprinted in* J.A. 194–203. Under the Plan, an employee whose initial application for benefits is denied, in whole or in part, by Plan administrators may appeal that decision within sixty days of its receipt to the Employees' Benefit Committee ("Benefits Committee"), which has "sole and complete discretionary authority" to determine eligibility for benefits. *Id.* § 3, ¶ 3(a), *reprinted in* J.A. 199, 214. The Benefits Committee must then notify the aggrieved employee of its decision within a certain time period, specifying in writing the reasons for such decision. *See id.*

The CBA likewise creates a mandatory, multi-step grievance procedure for the resolution of disputes between AT & T management and employees. *See* CBA Arts. 9–11, *reprinted in* J.A. 250–61. Article 10.10 of the CBA provides that "[i]f, at any time, a difference arises between [AT & T] and [CWA] regarding the true intent and meaning of a provision under this Agreement ..., the grievance procedures set forth in Article 9 shall be employed in an effort to settle said differences. If the grievance procedures do not result in settlement of the differences, [CWA] may institute [arbitration] proceedings ... to resolve the dispute in question...." *Id.* Art. 10.10, *reprinted in* J.A. 254.

### B. *The Merger and the AT & T–NCR Interchange Agreement*

In 1991, AT & T acquired NCR, which became and continues to be a wholly owned subsidiary of AT & T. As part of the merger agreement between AT & T and NCR, most of the computer-related operations and servicing formerly done at AT & T were shifted to NCR. AT & T employees affected by the merger were given several options by AT & T management, one of which was that AT & T would assist such employees in seeking

employment at NCR. While employees choosing this option were not guaranteed employment at NCR, approximately five hundred employees, including appellee Wingate, applied to and were hired by NCR.

In effecting the merger, AT & T and NCR purported to execute an "Interchange Agreement" ("AT & T–NCR Interchange Agreement"), which covers the continued eligibility under the Plan of former AT & T employees hired by NCR. *See* AT & T–NCR Interchange Agreement, *reprinted in* J.A. 215–21. This agreement provides for the portability of pension service credit between the two companies, which means that, upon retirement from NCR, a former AT & T employee will be eligible to receive whatever AT & T pension the employee had earned as of the date he or she moved from AT & T to NCR. The agreement treats years of service with NCR as years of service with AT & T for purposes of determining eligibility to receive a pension under the Plan. Under the AT & T–NCR Interchange Agreement, however, former AT & T employees hired by NCR cannot begin to receive any Plan benefits to which they would otherwise be entitled (if they retired or otherwise stopped working for AT & T and its affiliates) for as long as they are employed by NCR. AT & T management advised such employees of this fact before they left AT & T for NCR.

Approximately seventy of the almost five hundred CWA-represented AT & T employees who went to NCR, including Wingate, would have been eligible at that time to begin receiving pension payments from the Plan upon retiring from AT & T and its affiliates. A number of these employees, but not Wingate, filed initial applications for their pension benefits and were notified by Plan administrators that, because of the AT & T–NCR Interchange Agreement, they would not be eligible to receive their pensions while they worked for NCR. At the time this suit was filed, none of these employees had appealed to the Benefits Committee. As a result, the Plan had made no final determination regarding the eligibility of such employees to receive pension benefits while employed by NCR. In addition, CWA never filed a grievance or sought arbitration under

the CBA regarding any benefits-denial determinations of Plan administrators.

## C. *The District Court's Decision*

On October 25, 1991, appellees sued AT & T and the Plan in District Court under ERISA and the LMRA. First, appellees sought a determination under section 502 of ERISA that pension-eligible AT & T employees who went to work for NCR were currently entitled to receive pension benefits under the Plan. Specifically, appellees claimed that the Plan administrators' determinations that the AT & T–NCR Interchange Agreement required the suspension of the pension benefits of such employees was impermissible under the terms of the Plan. Second, appellees claimed that the AT & T–NCR Interchange Agreement constituted a detrimental "change" in the Plan without CWA's consent in violation of Article 19.30 of the CBA. Appellees sought to enforce the CBA under section 301 of the LMRA.

After the completion of discovery, appellants moved for summary judgment on several grounds. First, appellants claimed that CWA lacked standing to sue under section 502 of ERISA, either in its own right or in its capacity as representative of its members. Appellants also contended that neither the ERISA claim nor the LMRA claim was properly before the District Court because appellees had failed to exhaust their administrative remedies under the Plan and because CWA had failed to pursue the mandatory grievance and arbitration procedures established by the CBA. On the merits, appellants argued that the denial of benefits at issue resulted from a reasonable interpretation of the Plan that was entitled to deference under controlling Supreme Court precedent. In particular, appellants claimed that the AT & T–NCR Interchange Agreement was permissible pursuant to a Plan provision authorizing Interchange Agreements with parties other than former Bell system companies. *See* Plan § 8, ¶ 1, *reprinted in* J.A. 208. Appellants also claimed that this interpretation was required to avoid jeopardizing the Plan's tax-qualified status. Finally, with respect to the LMRA claim, appellants contended that the AT & T–NCR Interchange

Agreement did not constitute a "change" in the Plan in violation of the CBA.

The District Court rejected all of appellants' summary judgment claims and, *sua sponte*, granted summary judgment in favor of appellees. *CWA*, 828 F.Supp. at 77. The District Court first held that CWA had representational standing to sue on behalf of its members under section 502 of ERISA. *Id.* at 75. Second, with respect to the ERISA claim, the District Court excused appellees' failure to exhaust administrative remedies under the Plan because such efforts would have been futile. The court based this determination on the fact that "Plan administrators consistently have interpreted the Plan to deny [initial] claims such as those raised by [appellees] in this case." *Id.* Third, the District Court found that appellees' claim under section 301 of the LMRA was not subject to mandatory arbitration under the CBA and thus was properly before the court. In this regard, the court concluded both that the language in Article 19.40 of the CBA relating to arbitration is permissive and that additional language in that Article specifically exempts this dispute from mandatory arbitration. *Id.* at 75–76. Finally, on the merits, the District Court held that appellants had improperly determined that the AT & T–NCR Interchange Agreement precluded the pension-eligible AT & T employees hired by NCR from receiving pension benefits while they worked at NCR. *Id.* at 76–77. The court did not specifically hold, but appeared to assume, that this determination also constituted a "change" in the Plan to the detriment of such employees in violation of Article 19.30 of the CBA. The District Court postponed for a further hearing its determination as to what relief should be granted. *Id.* at 77–78.

## II. ANALYSIS

### A. *The ERISA Claim*

It is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans "must ... exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Springer v.*

*Wal–Mart Assocs. Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990); *accord Medina v. Anthem Life Ins. Co.,* 983 F.2d 29, 33 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993); *Smith v. Blue Cross & Blue Shield,* 959 F.2d 655, 658–59 (7th Cir.1992); *Horan v. Kaiser Steel Retirement Plan,* 947 F.2d 1412, 1416 (9th Cir.1991); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir.1990); *Makar v. Health Care Corp. of Mid–Atlantic,* 872 F.2d 80, 82–83 (4th Cir.1989). Because ERISA itself does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion. *See, e.g., Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980); *see also Committee of Blind Vendors v. District of Columbia,* 28 F.3d 130, 134 (D.C.Cir.1994) (stating that when claim is not governed by statute requiring exhaustion, "the exhaustion doctrine applies only 'as a matter of judicial discretion'" (quoting *Darby v. Cisneros,* —— U.S. ——, ——, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993))). Much like the exhaustion doctrine in the context of judicial review of administrative agency action, the exhaustion requirement in the ERISA context serves several important purposes. By preventing premature judicial interference with a pension plan's decision-making processes, the exhaustion requirement enables plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, make considered interpretations of plan provisions, and assemble a factual record that will assist the court reviewing the administrators' actions. *See Amato,* 618 F.2d at 567–68. Indeed, the exhaustion requirement may render subsequent judicial review unnecessary in many ERISA cases because a plan's own remedial procedures will resolve many claims. *See Makar,* 872 F.2d at 83.

There is no dispute that appellees failed to exhaust the administrative remedies available to them under the Plan in this case. While Plan administrators denied the initial applications of some twenty-three CWA members, at the time this suit was filed not one of those claimants had appealed to the Benefits Committee, the final arbiter under the Plan. Appellee Wingate had not even filed an initial claim for benefits. As a result, the Benefits Committee had rendered no final determination as to appellees' rights under the Plan at the time this suit was filed.

■ Appellees contend, however, that they were not required to exhaust their administrative remedies because exhaustion would have been futile. The general rule in this circuit is that the exhaustion requirement "may be waived in only the most exceptional circumstances." *Peter Kiewit Sons' Co. v. United States Army Corps of Eng'rs,* 714 F.2d 163, 168–69 (D.C.Cir.1983) (internal quotations omitted). This court has recognized a discretionary exception to the exhaustion requirement where resort to administrative remedies "'would be futile because of the certainty of an adverse decision.'" *Committee of Blind Vendors,* 28 F.3d at 133 n. 5 (quoting *Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 105 (D.C.Cir.1986)). "The futility exception is, however, quite restricted," *id.,* and has been applied only when resort to administrative remedies is "clearly useless." *Randolph–Sheppard Vendors,* 795 F.2d at 105; *see also Smith,* 959 F.2d at 659 ("In order to come under the futility exception, [plaintiffs] must show that it is *certain* that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision." (emphasis added)).

■ The District Court held, and appellees contend, that exhaustion of remedies under the Plan would have been futile in this case because Plan administrators had consistently interpreted the Plan to deny the initial claims of otherwise pension-eligible former AT & T employees who went to work for NCR. *CWA,* 828 F.Supp. at 75. Under the same rationale, the District Court excused appellee Wingate's failure to file even an initial claim with the Plan. Appellees further contend that, because AT & T management had advised employees leaving AT & T for NCR that they would not be eligible to receive benefits under the Plan while at NCR, and because the members of the Plan's Benefits Committee are drawn from AT & T management, it is inconceivable that the Benefits Committee would have reached a differ-

ent conclusion from AT & T management. This great unlikelihood, appellees conclude, also supports the District Court's futility finding.

■ We disagree. Other than the denial of initial benefits claims, there is nothing in the record that demonstrates that exhaustion of the Plan's administrative remedies by appellees would have been futile. Because the Plan's final review authority, the Benefits Committee, never had an opportunity to render a final determination on appellees' claims, we fail to see any basis for finding that an unfavorable decision by that Committee was a foregone conclusion. Even if one were to concede that an unfavorable decision from the Benefits Committee was *highly likely*, that does not satisfy our strict futility standard requiring a *certainty* of an adverse decision. Simply put, the denial of initial claims, which is all the record reveals, is not enough to show futility of internal Plan remedies.

■ Furthermore, this court will not assume that, merely because members of a pension-plan review committee are drawn from a company's management, the review committee will never reach an interpretation of the plan different from that of the company. If futility were established on this basis alone, exhaustion of internal administrative remedies would be excused in virtually every case where a pension plan is administered by a company's management and where the company has expressed a view as to the meaning of the terms of the plan. *Cf. Springer*, 908 F.2d at 901 (rejecting argument that exhaustion of internal plan remedies would be futile because plan administrator who makes initial benefits decisions and trustees who review appeals share common interests or affiliations). In view of the fact that ERISA specifically contemplates that employers may act as the fiduciaries and administrators of employee pension plans,

such a result would be anomalous.[1] *See* 29 U.S.C. § 1003(a) (1988); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986) ("[T]he ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and employer."), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987).

■ The District Court's futility decision is also inconsistent with the exhaustion doctrine's purpose of facilitating meaningful judicial review in ERISA cases such as this. The Supreme Court has held that "a denial of benefits challenged under [section 502 of ERISA] is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case courts apply an abuse-of-discretion standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989) (emphasis added); *accord Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1452 (D.C.Cir.1992). Therefore, where as here the pension administrator has discretionary authority to construe the terms of the plan and determine eligibility, *see* Plan § 3, ¶ 3(a), *reprinted in* J.A. 199, 214, it is important for the plan to provide a final, fully considered, and reasoned explanation for the court to evaluate. However, because the Benefits Committee in this case never rendered a final determination, and thus never provided a fully reasoned explanation for such a decision, the District Court had nothing before it, except the arguments of counsel, to which it could defer. By permitting appellees' ERISA claim to proceed before obtaining a final decision from the Plan, the District Court left itself unable to apply properly the *Firestone* rule of deference.

For the foregoing reasons, we conclude that the District Court abused its discretion by excusing appellees' failure to exhaust

---

1. We also reject appellees' reliance, with respect to their futility argument, on actions taken by the Benefits Committee after this suit was filed and which were never presented to the District Court. Entertaining such after-the-fact evidence would entirely undermine the exhaustion requirement, permitting plaintiffs to bypass administrative remedies, file suit, and then hope for

subsequent events to justify their futility claims. *See Kizas v. Webster*, 707 F.2d 524, 543, 547 (D.C.Cir.1983) (rejecting futility argument that was based on agency action taken well after plaintiffs had filed suit in district court), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

their administrative remedies under the Plan. We therefore vacate the District Court's judgment with respect to appellees' ERISA claim and remand to the District Court with instructions to dismiss that claim without prejudice in order to allow appellees to exhaust their Plan remedies. Alternatively, the District Court may exercise its discretion to maintain jurisdiction over appellees' ERISA claim while appellees pursue their administrative remedies. If their appeals to the Benefits Committee are denied, the District Court may properly consider appellees' ERISA claim at that time.[2]

## B. *The LMRA Claim*

■ It is a well-settled rule of labor law that parties to a collective bargaining agreement normally must seek to resolve their contract disputes under agreed-upon grievance and arbitration procedures; and where the parties have agreed to final and binding arbitration, disputes within the scope of the arbitration clause may not be pursued in a breach of contract action under section 301 of the LMRA in lieu of arbitration. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965); *see also DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976). This requirement reflects the congressional policy that "[f]inal adjustment by a method agreed upon by the parties is . . . the desir[ed] method for settlement of grievance disputes." 29 U.S.C. § 173(d) (1988). That policy " 'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.' Courts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.' " *Hines,* 424 U.S. at 562–63, 96 S.Ct. at 1055 (quoting *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 566, 569, 80

S.Ct. 1343, 1345, 1347, 4 L.Ed.2d 1403 (1960)).

■ Notwithstanding this clear requirement, the District Court permitted appellees' section 301 claim to proceed despite their failure to pursue the grievance and arbitration procedures established under the CBA. The District Court relied on two separate grounds for its conclusion that the parties' dispute over the interpretation of the AT & T–NCR Interchange Agreement was not subject to mandatory arbitration. *CWA,* 828 F.Supp. at 75–76. First, the court found that the relevant CBA provisions used permissive, not mandatory, language. Article 19.30 of the CBA provides that AT & T cannot make any "change" in the Plan which would reduce or diminish the benefits of employees represented by CWA without the Union's consent. *See* CBA Art. 19.30, *reprinted in* J.A. 262. The first sentence of Article 19.40 provides that "[a]ny dispute involving the true intent and meaning of [Article] 19.30 may be presented as a grievance and if not resolved by the parties, may be submitted to . . . arbitration." *Id.* Art. 19.40. Because Article 19.40 appears to use permissive language—"disputes *may* be submitted to arbitration"—the District Court concluded that the dispute in this case was not subject to mandatory arbitration and that pursuit of arbitration was thus not required.

The District Court's conclusion misreads the CBA and ignores controlling law. Article 10.10 of the CBA expressly requires mandatory, not discretionary, grievance procedures, providing that "[i]f, at any time, a difference arises between [AT & T] and the Union regarding the true intent and meaning of a provision under this Agreement . . . , the grievance procedures set forth in Article 9 *shall be employed* in an effort to settle said differences." CBA Art. 10.10 (emphasis added), *reprinted in* J.A. 254. Thus, Article 19.40's provision that Article 19.30 disputes "may" be presented as a grievance and "may" be submitted to arbitration means only that such disputes, *if* they arise, will be subject to the mandatory grievance and arbitration procedures required by Article 10.10.

2. Once CWA-represented employees have exhausted their administrative remedies under the Plan, CWA will acquire representational standing to sue on behalf of its members under section 502 of ERISA.

Furthermore, even if the first sentence in Article 19.40 were ambiguous, federal labor law still would require arbitration in this case. Federal labor policy establishes a heavy presumption in favor of mandatory arbitration of disputes under collective bargaining agreements, unless the agreement expressly provides that arbitration is not the exclusive remedy. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). "Use of the permissive 'may' does not of itself reveal a clear understanding between the contracting parties that [disputants] ... are free to avoid the contract [grievance] procedure.... Any doubts must be resolved against such an interpretation." *Maddox*, 379 U.S. at 658–59, 85 S.Ct. at 619–20 (citing *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53). The District Court thus erred in finding that the use of the permissive "may" in Article 19.40 exempted Article 19.30 disputes from the mandatory grievance and arbitration procedures established in Article 10.10.

The District Court's second ground for excusing appellees' failure to pursue arbitration, upon which appellees exclusively rely, is similarly flawed. The second sentence of Article 19.40 states that "nothing herein shall be construed to subject the ... Plans (or their successors) or their administration or the terms of the proposed change(s) in the Plan(s) to arbitration." CBA Art. 19.40, *reprinted in* J.A. 262. The District Court found, and appellees contend, that this provision also exempts from compulsory arbitration the dispute in this case over whether the AT & T–NCR Interchange Agreement constituted an impermissible "change" in the Plan in violation of Article 19.30. This argument simply fails. Article 19.30 prohibits changes in the Plan that reduce or diminish employee benefits without CWA's consent. Article 19.40 allows CWA to grieve and arbitrate over any such changes; and if such a grievance is sustained, CWA can seek redress *from the employer* for any lost benefits. The provision in Article 19.40 that bars CWA from filing a grievance against the Plans or their administration, and from seeking to alter the terms of the Plans, in no way abrogates the right of CWA to seek relief from the employer for impermissible changes in the Plans.

Appellees' reading of the second sentence of Article 19.40 would render the first sentence of Article 19.40 a nullity. The District Court read the second sentence to exempt from mandatory arbitration any dispute requiring an arbitrator to construe the terms of the Plan for purposes of determining whether the Plan had been changed without CWA's consent. As noted, however, the first sentence of Article 19.40 specifically subjects Article 19.30 disputes, which necessarily involve whether or not the Plan has been changed without CWA's consent, to final and binding grievance and arbitration procedures established by the CBA. It would therefore be absurd to interpret the second sentence of Article 19.40 as exempting those exact disputes from mandatory arbitration. We will not accept a reading of Article 19.40's second sentence that would render the first sentence meaningless, especially where the two provisions are easily reconciled.

The proper course for appellees is to submit this dispute to arbitration under the CBA. As appellants conceded at oral argument, an arbitrator surely would have authority to construe the terms of the Plan for purposes of determining whether the AT & T–NCR Interchange Agreement violated Article 19.30 by effecting an impermissible change in the Plan without CWA's consent. If it were determined that such a change was made, the arbitrator could issue an appropriate award based on his or her construction of the Plan. If AT & T refused to comply with the arbitrator's award, appellees at that time could bring suit to enforce the award in district court under section 301 of the LMRA. Thus, even though the second sentence of Article 19.40 prevents an arbitrator from ordering Plan administrators to take specific actions, appellees would be able to obtain adequate relief from an arbitrator's award against AT & T. Accordingly, we reverse the District Court's denial of appellants' motion to dismiss the section 301 claim as well as its *sua sponte* grant of summary judgment for appellees on that claim.

**436**

### III. Conclusion

Because we find no basis for concluding that exhaustion of administrative remedies under the Plan in this case would have been futile, the District Court's grant of summary judgment for appellees on the ERISA claim is vacated and remanded with instructions. Furthermore, because appellees failed to pursue the mandatory grievance and arbitration procedures established under the CBA prior to bringing their LMRA claim, the District Court's denial of appellants' motion to dismiss that claim is reversed.

*So ordered.*