**John M. GREER, Plaintiff,**

v.

**GRAPHIC COMMUNICATIONS INTERNATIONAL UNION OFFICERS, REPRESENTATIVES AND ORGANIZERS RETIREMENT FUND AND PLAN, et al., Defendants.**

Civil Action No. 94–2118 (JR).

United States District Court,
D. Columbia.

July 8, 1996.

Paul J. Ondraski, Jr., Sara E. Hauptfuehrer, Steptoe & Johnson, Washington, DC, for Plaintiff.

Steven J. Sacher, Neil I. Levy, David Pickle, Washington, DC, Martin R. Ganzglass, O'Donnell, Schwartz & Anderson, P.C., Washington, DC, for Defendants.

## MEMORANDUM

ROBERTSON, District Judge.

This action for declaratory and injunctive relief alleges violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, by a pension fund and its trustees. Defendants have moved for a stay of proceedings, asserting that plaintiff must first submit his claims to arbitration. For the reasons set forth below, the motion will be denied.

### Facts

Plaintiff John Greer is a former officer of Graphic Communications International Union (GCIU). Before he was an officer of GCIU, Greer was an officer of Graphic Arts International Union (GAIU). GCIU is the product of a merger between GAIU and International Printing and Graphic Communications Union (IP & GCU). When the two unions merged in 1983, GAIU officers including plaintiff who became officers of the newly-formed GCIU also became participants in a newly-created pension plan called GCIU Officers, Representatives and Organizers Retirement Fund and Plan (known as the ORO Plan).

Ten years later, by then approaching retirement age, Greer asked the ORO Plan administrator for a calculation of his pension benefit. After the administrator complied and explained his calculation, Greer complained in writing to defendant James Norton, chairman of the board of trustees of the ORO Plan.

Greer's complaint was about changes to the ORO Plan that had been adopted by the trustees in February and August of 1993. The changes, to § 2.03 of the Plan, were purportedly made for clarification, but what they "clarified" was that Greer's benefits un-

der the ORO Plan were to be reduced by the amount of his benefits under a separate plan, the Supplemental Retirement and Disability Fund (SRDF), of which Greer is also a beneficiary.[1] The prior version of § 2.03 in the ORO Plan had contained no reference to a reduction in benefits based on benefits paid under the SRDF Plan.

In August 1994, after Norton affirmed the ORO Plan administrator's calculation, and after an exchange of memoranda with various Plan trustees over several months, Greer presented his complaint to the entire ORO Plan board. The board rejected Greer's appeal and notified him of his right, under the ORO Plan, to submit his dispute to arbitration.

On September 14, 1994, Greer notified GCIU that he would be leaving his position, effective October 1, 1994. He filed this action on September 30, 1994, the day before his departure, without having applied for benefits. His complaint sets forth three causes of action. Count I alleges that § 2.03 of the ORO Plan, as rewritten in 1993, violates ERISA § 204(g)(1), 29 U.S.C. § 1054(g)(1), which provides that "the accrued benefit under a plan may not be decreased by an amendment of the plan" except in situations not applicable here. Count II alleges an analogous violation of ERISA § 204(h), 29 U.S.C. § 1054(h), which states that a plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual" unless plan participants are notified within 15 days. Count III alleges a breach of fiduciary duty by the ORO Plan trustees.

### Analysis

The question presented by defendant's motion to stay is whether Greer must exhaust the arbitration procedures set forth in the ORO Plan before bringing his statutory claims in this court. Defendants argue that Greer's suit amounts to a claim for benefits denied, and that the ORO Plan's arbitration provision is a mandatory administrative remedy that Greer cannot avoid by recourse to this court. Greer responds that arbitration

is not mandatory under the Plan and that exhaustion is not required where a beneficiary does not challenge a denial of benefits but, instead, alleges a statutory violation.

Defendants rely heavily upon *Communications Workers of America v. AT & T*, 40 F.3d 426 (D.C.Cir.1994), the leading case in this Circuit on exhaustion of available ERISA plan remedies. In that case, several former AT & T employees who had gone to work for NCR Corporation after the AT & T–NCR merger were denied benefits under the AT & T Pension Plan because "[p]ursuant to an agreement between AT & T and NCR, ... AT & T and the Plan determined that certain employees who left AT & T for NCR would be ineligible to receive pension benefits under the Plan until after they ceased working for NCR." 40 F.3d at 428. The union and an affected employee sued under § 502 of ERISA and under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988), asserting that the denial of benefits violated the terms of both the pension plan and the collective bargaining agreement between AT & T and the union. The District Court denied AT & T's motion for summary judgment and granted summary judgment *sua sponte* for the union and the affected employee, finding that their failure to exhaust administrative remedies under the plan was not a bar to their ERISA claim because pursuit of such remedies would have been futile. *Id.* at 429. The Court of Appeals reversed. After observing that exhaustion is not a requirement of ERISA but is a matter of judicial discretion, *id.* at 432, the Court of Appeals held that the District Court had abused its discretion by excusing the failure to exhaust. The court found "nothing in the record that demonstrates that exhaustion of the Plan's administrative remedies by appellees would have been futile," *id.* at 433, and adopted the rule, established in several other Circuits, that "plaintiffs seeking a determination pursuant to ERISA of rights *under their pension plans* 'must ... exhaust available remedies under their ERISA-governed plans before they may bring suit in federal court.'"

---

1. The SRDF is a separate and distinct "multi-employer plan" in which the GAIU participated, along with other employers, and in which partic-

ipation was continued by GCIU after the merger, but only for the benefit of former GAIU employees. GCIU is not the sponsor of the SRDF plan.

*Id.* at 431 (quoting *Springer v. Wal–Mart Assocs. Group Health Plan,* 908 F.2d 897, 899 (11th Cir.1990)) (emphasis added).

Defendants' reliance on the *Communications Workers* case is misplaced. Greer is not seeking a determination of rights "under his pension plan." He has not applied for, nor has he been denied, benefits under the ORO Plan. His claim, rather, is that the trustees' rewriting of § 2.03 of the plan was an amendment that reduces benefits in violation of several of ERISA's statutory provisions. *See Graphic Communications Union No. 2 v. GCIU–Employer Retirement Benefit Plan,* 917 F.2d 1184, 1187 (9th Cir.1990) (fundamental question is whether the claim arises under the plan or ERISA). There is no controlling precedent in this Circuit on the question whether exhaustion is required before a district court may rule on a claimed violation of ERISA's statutory protections. Other circuits are divided on the issue. *Compare Amaro v. Continental Can Co.,* 724 F.2d 747 (9th Cir.1984) (no exhaustion required), *with Kross v. Western Electric Co., Inc.,* 701 F.2d 1238 (7th Cir.1983) (exhaustion required). The weight of authority, and, in my view, the better reasoned opinions, conclude that exhaustion will not be required where a plaintiff seeks to enforce statutory protections. *See Rauh v. Coyne,* 744 F.Supp. 1186 (D.D.C.1990) (citing cases).[2]

The defendants concede that the ORO Plan trustees have already applied their expertise in this case and have given their definitive interpretation of the plan's provisions. The important goals that underlie this Circuit's decision in *Communications Workers*—"allowing plan administrators to apply their expertise and exercise their discretion to manage the plan's funds, correct errors, or make considered interpretations of plan provisions" prior to judicial review, *Communications Workers, supra,* at 432—have already been fully served. Thus, requiring Greer to file a claim and retrace his steps up to the

point of arbitration would not only be futile, it would also be redundant.

The arbitration made available by the ORO Plan is not made mandatory by the terms of the Plan, and it is not the "review by the appropriate named fiduciary," contemplated by § 503 of ERISA. It is an adversarial proceeding before a neutral decision maker. Such a proceeding would not serve the policy goals underscored by the *Communications Workers* opinion. Moreover, it is the federal courts, and not private arbitrators, that Congress has charged with the responsibility of deciding whether the explanation given by the trustees complies with ERISA. *See* 29 U.S.C. § 1001(b) (policy of ERISA to provide "ready access to Federal courts"); *Amaro, supra,* at 751 (enforcement of ERISA's statutory protections "a task for the judiciary, not an arbitrator").

An appropriate order accompanies this memorandum.

### ORDER

For the reasons given in the accompanying memorandum, it is this 3d day of July, 1996

**ORDERED** that defendants' motion to stay proceedings [# 6] is **denied.** It is

**FURTHER ORDERED** that the parties meet and confer and file a revised Rule 206 Statement within 30 days of the date of this order.

---

**2.** Artful pleading can transform a claim for benefits denied into a statutory claim of breach of fiduciary duty, *see Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988), but this is not such a case. Note, among other things, that Greer's claim of breach of fiduciary duty has nothing to do with his benefits determination. His claim is that the rewriting of § 2.03 amounts to a breach of fiduciary duty because it was accomplished in order to lower the operating expenses of GCIU, of which the trustees were officers or representatives.