**Debbie Deane PERKINS, Plaintiff,**

v.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; H.F. Ahmanson & Company Long Term Disability Plan, Defendants.**

No. CV 05–2070 NM (CWX).

United States District Court, C.D. California.

March 1, 2006.

Glenn R. Kantor, Peter S. Sessions, Kantor & Kantor, Northridge, CA, for Plaintiff.

Jennifer J. Moon, Mark T. McClenning, Robert M. Young, Wilson Elser Moskowitz

Edelman & Dicker, Los Angeles, CA, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

MANELLA, District Judge.

### I. INTRODUCTION

On March 23, 2005, Plaintiff Debbie Deane Perkins ("Perkins") filed this action against Defendants The Prudential Insurance Company of America ("Prudential") and H.F. Ahmanson & Company Long Term Disability Plan ("LTD Plan"), alleging claims for injunctive and declaratory relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically pursuant to 29 U.S.C. §§ 1132(a), (e), (f), and (g). On October 18, 2005, following a settlement conference before Magistrate Judge Nagle, the parties settled the case. On November 28, 2005, Perkins filed the instant motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). For the reasons stated below, the motion is GRANTED.

### II. FACTS

LTD Plan is an employee welfare benefit plan regulated by ERISA and established by H.F. Ahmanson & Company ("Ahmanson"), under which Perkins is and was a participant, and pursuant to which she is entitled to Long Term Disability ("LTD") benefits. Compl. ¶ 4. Prudential is the insurer of benefits under the LTD Plan. Compl. ¶ 3.

In February 1997, Perkins became disabled, and in July of that year, submitted a claim for LTD benefits to Prudential. Declaration of Debbie Deane Perkins ("Perkins Decl") ¶ 3. In October 1997, Prudential denied her claim. Perkins Decl. ¶ 4. Perkins appealed the adverse decision through Prudential's administrative appeal process, and Prudential affirmed its denial in February 1999. *Id.* Shortly thereafter, in April 1999, Perkins filed suit against Prudential. Perkins Decl. ¶ 4; Declaration of Glenn R. Kantor in Support of Mot. for Atty Fees ("Kantor Decl.") ¶ 2. Perkins' case, *Debbie Deane Perkins v. The Prudential Insurance Co. of America, et al.,* CV 99–3651 LGB *("Perkins I"),* was assigned to United States District Judge Baird. *Id.* Judge Baird, reviewing Prudential's decision *de novo,* found in favor of Perkins and awarded her benefits. *See* Findings of Fact and Conclusions of Law, *Perkins I,* filed April 26, 2000 (Plaintiff's Req. for Judicial Notice, Ex. B). Prudential did not appeal the judgment, and pursuant thereto, commenced paying Perkins disability benefits. Kantor Decl. ¶ 5.

In December 2001, Prudential terminated Perkins' benefits alleging, *inter alia,* that she had been observed engaging in activities that demonstrated her ability to continue working. Perkins Decl., Ex. A at 20. Perkins again appealed Prudential's decision to deny her benefits and subsequently requested that Prudential not terminate her benefits pending completion of the appeal. Kantor Decl. ¶¶ 7–16. Prudential neither responded to her request nor promptly acted on her appeal. Kantor Decl. ¶¶ 17, 22. When nearly a year had passed and Prudential had failed to act, Perkins filed a second suit. Kantor Decl. ¶ 22. That second action, *Debbie Deane Perkins v. The Prudential Insurance Co. of America, et al.,* CV 02–9224 NM *("Perkins II"),* was assigned to this court. *See* Plaintiff's Req. for Judicial Notice, Ex. C. Before the matter proceeded to trial, Prudential unilaterally decided to reinstate Perkins' benefits, pay the retroactive benefits due, and compensate Perkins for reasonable attorneys' fees. Perkins Decl. ¶ 8. Nevertheless, Perkins proceeded with the matter, seeking declaratory and injunctive relief to ensure that Prudential would not again terminate her benefits absent an

order from the court. Kantor Decl. ¶ 24. On July 9, 2003, following a status conference, the court determined that it would not entertain Perkins' request for injunctive relief at that time; rather, the court encouraged Perkins to return to court if and when Prudential again terminated her benefits. *Id.* ¶¶ 24, 25.

On February 17, 2005, Prudential notified Perkins that it would again be terminating her benefits as of March 31, 2005, for reasons similar to those given in the prior letter of termination, and additionally, based on the findings of an assessment performed in December 2004. Perkins Decl., Ex. B at 23–26; Kantor Decl. ¶ 27. In response, Perkins filed the instant action—her third—for, *inter alia,* reinstatement of benefits and an order enjoining Prudential from terminating her benefits until she had proceeded through the administrative appeal process and, if necessary, had tried her case before the court ("*Perkins III* "). *Id.; see also* Compl. at 8. No formal hearing was held on the request for a preliminary injunction; instead, the court directed the parties to take part in a settlement conference before Magistrate Judge Nagle. Kantor Decl. ¶ 28. Prudential continued to pay Perkins benefits throughout the pendency of the litigation. Mot. at 9; Opp. at 4.

On September 15 and October 18, 2005, the parties conducted mediation sessions in front of Judge Nagle. Kantor Decl. ¶ 28. At the conclusion of the October 18 session, Prudential offered to reinstate Perkins' benefits if she agreed to forego the right to petition the court for an award of attorneys' fees.[1] *Id.* Following further negotiations, the parties agreed that Prudential would reinstate Perkins' benefits without a prohibition against Perkins seeking fees, as long as any fee award was

capped at $20,000. Kantor Decl. ¶¶ 27–30; Opp. at 4. The parties further agreed that any attorneys' fee award rendered by the court would not be appealed. Kantor Decl. ¶ 30; Opp. at 4. On November 28, 2005, Perkins filed the instant motion for attorneys' fees.

### III. DISCUSSION

■ ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

> This section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.... As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.

*Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984) (citations omitted). Here, Perkins' suit sought to enjoin Prudential from terminating her benefits during the pendency of her appeal. She succeeded, as Prudential paid Perkins benefits throughout the instant litigation. Moreover, Prudential ultimately voluntarily reinstated Perkins' benefits. Accordingly, Perkins succeeded on a significant issue in litigation which achieved the benefit she sought in bringing the suit.

■ Prudential argues that no fees should be awarded because Perkins did not exhaust the available administrative remedies before bringing her suit.

1. The parties have stipulated to the admission of information regarding settlement negotia-

tions. Kantor Decl. ¶ 28.

It is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans must exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court. *Communications Workers of America v. American Tel. and Tel. Co.*, 40 F.3d 426, 431 (D.C.Cir.1994). However, courts have recognized a discretionary exception to the exhaustion requirement where "resort to administrative route is futile or the remedy inadequate." *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir.1980); *accord Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1485–86 (9th Cir.1995). As one court has observed, the exhaustion requirement may be waived "where resort to administrative remedies would be futile because of the certainty of an adverse decision . . . [and] when resort to administrative remedies is clearly useless." *Communications Workers*, 40 F.3d at 432; *see also Smith v. Blue Cross & Blue Shield*, 959 F.2d 655, 659 (7th Cir.1992) ("In order to come under the futility exception, [plaintiffs] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision.").

Here, it is undisputed that Perkins did not exhaust her administrative remedies; she filed the instant suit for injunctive relief before appealing the latest termination of benefits. She argues, however, that given Prudential's prior denial of benefits and subsequent termination of benefits, as well as the attendant delay in adjudicating her appeal, any such request and appeal would have been futile. *See* Mot. at 9–12. The court agrees. Prudential has consistently refused to pay Perkins' benefits until sued. Perkins has been forced to file multiple suits to obtain benefits that Prudential now concedes she is due.

When Prudential terminated Perkins' benefits the first time, she requested payment of benefits while the appeal was being administered. *See* Kantor Decl. ¶ 16, Ex. L. Prudential failed to respond to her request. *See id.* ¶ 17. Perkins was forced to file suit merely to get a decision on the appeal from Prudential—after a year of waiting—all the while not receiving benefits she was due. There is no reason to think Prudential would have been any more receptive to an administrative appeal in the instant case. That Prudential has repeatedly paid Perkins' benefits only after the institution of litigation compels the conclusion that litigation was necessary. In short, Perkins had no choice but to file suit to ensure that benefits to which she was entitled would not be terminated pending the administrative appeal; any other course would have been futile. Accordingly, Perkins has made the requisite showing of futility to justify her circumvention of the administrative review process.

■ Section 1132(g)(1) of ERISA provides, in relevant part: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Ninth Circuit has established a five factor test to determine whether to award attorneys' fees under this statute. *Saltarelli v. Bob Baker Group Medical Trust*, 35 F.3d 382, 388 (9th Cir.1994); *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). These factors include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought

to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.*

 Here, four of the five factors weigh in favor of an award of attorneys' fees. Perkins has now been constrained to seek the assistance of the court in order to secure her benefits, and Prudential has repeatedly refused to act until dragged into court. There is no question that Prudential has the ability to satisfy an award of fees, and such an award may deter other insurers from acting similarly in the future. Moreover, the relative merits of the parties' positions are not in doubt; Prudential voluntarily reinstated Perkins' benefits and has twice voluntarily conceded—once litigation has been instituted—that she is entitled to benefits. While the fourth factor does not weigh in Perkins' favor, on balance, the *Rykoff* factors support an award of attorneys' fees.

 In ERISA actions, the court determines the award amount by using a hybrid lodestar/multiplier approach. *Van Gerwen v. Guarantee Mutual Life Co.,* 214 F.3d 1041, 1045 (9th Cir.2000) (adopting the *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) approach for determine attorneys' fees in ERISA actions). The court determines the "lodestar" amount "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Gerwen,* 214 F.3d at 1045. "The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed." *Id.* The court excludes from the lodestar amount "hours that are not reasonably expended because they are excessive, redundant, or otherwise unnec-

essary." *Id.* (citation omitted). The calculated lodestar amount is "presumptively the reasonable fee amount." *Id.*

 Here, Perkins has submitted evidence showing that counsel expended 78.5 hours preparing for and litigating this case. Kantor Decl., Ex. Q. Given the complexity of the matter and the fact that two different mediation sessions were necessary to resolve the underlying dispute, the court finds this to be a reasonable time expenditure. Nor has Prudential disputed the reasonableness of the submitted time sheets. Perkins seeks a total of $20,000 in attorneys' fees.[2] Mot. at 13. Based on the hours expended, such an award would result in an hourly rate of $254.77 for counsel. In a comparable case, this court ruled that a rate of $400 per hour was a reasonable hourly rate for Mr. Kantor. *See Cortes v. Metropolitan Life Ins. Co.,* 380 F.Supp.2d 1125 (C.D.Cal.2005); *see also* Kantor Decl. ¶ 31 (discussing Mr. Sessions' qualifications and experience). Accordingly, a rate of $254.77 is reasonable here for both Mr. Kantor and Mr. Sessions, and $20,000 is an appropriate "lodestar" amount..

## IV. CONCLUSION

For the foregoing reasons, Perkins' motion for attorneys' fees is GRANTED. Perkins shall take the sum of $20,000.00 from Prudential.

IT IS SO ORDERED.

---

**2.** The parties, as part of their settlement, stipulated to a $20,000 cap on attorneys' fees.

Mot at 2.