Shawn S. CLANCY

v.

EMPLOYERS HEALTH INSURANCE COMPANY

No. Civ.A. 99–0381.

United States District Court, E.D. Louisiana.

Nov. 24, 1999.

Kyle R. Covert, Sean Duvall Fagan, Baton Rouge, LA, for Plaintiff.

Kyle Liney Gideon, Lafayette, LA, Brian P. Brooks, Washington, DC, for Defendant.

### ORDER AND REASONS

·CLEMENT, District Judge.

Before the Court are five motions, all of which have been decided on memoranda: Defendant's Motion for Summary Judgment; Defendant's Motion for Relief Pursuant to Rule 23(d)(4); Defendant's Motion for Protective Order and/or Alternatively Motion to Stay Class Discovery Pending Decision on Class Certification and Issuance of Case Management Orders; Defendant's Motion to Dismiss its Counterclaim; and Plaintiff's Motion for Class Certification. For the following reasons, Defendant's Motions for Summary Judgment and to Dismiss its Counterclaim are GRANTED and Plaintiff's claims are DISMISSED. Plaintiff's Motion for Class Certification, Defendant's Motion for Relief Pursuant to Rule 23(d)(4), and Defendant's Motion for Protective Order and/or Alternatively Motion to Stay Class Discovery are DENIED.

### I. BACKGROUND.

This case stems from Plaintiff Shawn Clancy's unsuccessful attempt to receive certain benefits from Defendant Employer's Health Insurance Company ("EHIC") under the terms of a group health insurance policy financed by Ms. Clancy's employer, Leake & Andersson, LLP ("Leake & Andersson"). Ms. Clancy claims that EHIC improperly withheld benefits in violation of Louisiana Revised Statute 22:663 and claims entitlement to these funds and to state-law penalties available under Louisiana Revised Statute 22:657 for improper processing of her claims. Ms. Clancy further requests that she be made representative of a class of similarly-aggrieved policyholders. In addition to opposing Ms. Clancy's motion for class certification, EHIC contends that Ms. Clancy's claims are preempted by ERISA, 29 U.S.C. §§ 1001–1461, and therefore should be dismissed.

On September 28, 1995, Shawn Clancy was injured in an automobile accident, which required medical treatment and services. Petition ¶ 5. At the time of the accident, Ms. Clancy was insured under two separate policies. The first policy was an individual policy from State Farm Auto Insurance, which provided uninsured and underinsured motorist coverage and medical pay coverage. Petition ¶ 4. The second policy was a group health insurance policy issued by EHIC, which provided medical coverage to eligible employees of Leake and Andersson. Leake & Andersson paid 100% of the premium for the EHIC policy. Defendant's Statement of Uncontested Material Facts ¶ 6.

Ms. Clancy attempted to recover benefits under both policies. The record indicates that she successfully recovered benefits from State Farm under both the medical pay coverage and the uninsured motorist coverage. Petition ¶¶ 8–9. Ms. Clancy also recovered benefits from EHIC, although not in the amount to

which she claims she is entitled. EHIC informed Ms. Clancy that it considered the State Farm policy to be her primary policy, subject to the coordination of benefits provision of her EHIC policy, and therefore made no payments for any medical treatment or services until after State Farm's medical pay coverage ($5000) had been exhausted. Petition ¶¶ 7–8. EHIC also claimed the right to obtain reimbursement or subrogation for $19,328 in payments EHIC made on behalf of Ms. Clancy. This amount was to come out of a settlement between Ms. Clancy and State Farm in connection with her uninsured motorist coverage. Petition ¶ 9.

Ms. Clancy objects to both EHIC's coordination of benefits and EHIC's request for reimbursement or subrogation. According to Ms. Clancy,

> Under the plain meaning of the Employers Health policy and Louisiana law, Employers Health should not have coordinated any benefits available under the individually underwritten Med Pay coverage under the State Farm policy and should not have requested reimbursement or subrogation from or against any recovery received by Shawn S. Clancy from the State Farm Uninsured Motorist coverage.

Petition ¶ 12. Instead, she contends that EHIC "should have paid and processed [her] claims without regard to any coverage afforded by the State Farm policy." *Id.* Rather than availing herself of the appeal policy contained within the EHIC policy to redress her grievance, Ms. Clancy filed suit in state court, seeking to recover the $5000 in coordinated benefits, as well as penalties and attorney's fees under state law, and to receive a declaratory judgment that she is not liable for $19,328 in reimbursement or subrogation.

Ms. Clancy also requests that she be made representative of a class of similarly situated individuals who allegedly have been injured by EHIC's coordination and subrogation/reimbursement practices.

EHIC responded to Ms. Clancy's state suit by removing it to federal court on the basis that Ms. Clancy's complaint "challenges a claim decision under an employee benefit plan as ... defined by" the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002, and because Ms. Clancy's demanded relief is governed by ERISA, 29 U.S.C. § 1001, *et seq.* Notice of Removal ¶ 6.

## II. *LAW AND ANALYSIS.*

The parties have now asked the Court to rule on several motions. Three motions decided here concern Ms. Clancy's request for class certification[1] and one concerns EHIC's request for dismissal of its counterclaim. However, because EHIC's Motion for Summary Judgment is the keystone to the entire dispute, the analysis will begin there.

### A. *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.*

EHIC moves the Court to render summary judgment on three grounds. First, EHIC contends that Ms. Clancy's EHIC policy is an employee welfare benefit plan governed by ERISA and that Ms. Clancy was a participant in that plan. Second, EHIC contends that ERISA preempts Ms. Clancy's state law claims and so does not permit extra-contractual, compensatory, or punitive damages. Third, EHIC contends that Ms. Clancy's remaining claims should be dismissed because she failed to exhaust the administrative remedies provided by the EHIC policy. Ms. Clancy contests all three grounds.[2]

---

1. Plaintiff's Motion for Class Certification; Defendant's Motion for Relief Pursuant to Rule 23(d)(4); and Defendant's Motion for Protective Order and/or Alternatively Motion to Stay Class Discovery Pending Decision on Class Certification and Issuance of Case Management Orders.

2. Local Rule 7.8.1E states: "Except with prior permission of the judge, no trial brief or memorandum supporting or opposing a motion shall exceed 25 pages in length, exclusive of exhibits." Ms. Clancy's Memorandum in Opposition to Summary Judgment is 42 pages. Even recognizing that Ms. Clancy's counsel uses a larger-than-usual font size, this

### 1. *Standard of Review.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether summary judgment is appropriate, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Oliver Resources PLC v. International Finance Corp.,* 62 F.3d 128, 130 (5th Cir.1995). To oppose a motion for summary judgment, the non-movant cannot rest on mere allegations or denials but must set forth specific facts showing that there is a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–22, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.,* 55 F.3d 181, 184 (5th Cir.1995); FED. R. CIV. P. 56(e).

### 2. *Was the EHIC Policy an ERISA Plan?*

The parties' first, and most fundamental dispute, is whether the EHIC policy is part of an employee welfare benefit plan governed by ERISA. For the reasons set forth below, the Court finds, as a matter of law, that the EHIC policy is part of an ERISA plan.[3]

ERISA defines an employee welfare benefit plan in pertinent part as:

> is still excessive. Local Rule 56.2E & W states that: "Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." Ms. Clancy's counsel submitted this statement nearly three weeks after submitting the opposition memorandum. In the interests of justice, the Court has overlooked these procedural defects and has considered all of the materials submitted on Ms. Clancy's behalf. Counsel is cautioned, however, to pay more attention to procedural rules in the future.

any plan, fund, or program which was ... established or maintained by the employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical or hospital care or benefits.

ERISA § 3(1).[4]

Whether an ERISA plan exists is a question of fact. *McDonald v. Provident Indem., Life Ins., Co.,* 60 F.3d 234, 235 (5th Cir.1995). Courts in the Fifth Circuit apply a three-part, comprehensive test for determining whether a particular plan qualifies as an "employee welfare benefit plan". *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir.1993). The Court must ask whether a plan (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan", *i.e.* establishment or maintenance by an employer intending to benefit employees. *Id.; McDonald,* 60 F.3d at 236. If the Court finds that there is no genuine issue of fact as to the establishment of all three of these factors, then EHIC is entitled to judgment as a matter of law that an ERISA plan exists.

The Court's first task in applying the *Meredith* test is to determine whether a plan exists by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, a class of beneficiaries, the source

---

**3.** The Court notes Ms. Clancy's emphasis that the burden is on EHIC to demonstrate the absence of a genuine issue of material fact as to the existence of an ERISA plan. The Court agrees with Ms. Clancy, but finds that EHIC has met its burden.

**4.** For convenience and consistency, the Court shall refer to the ERISA section rather than to the United States Code section from hereafter.

of financing, and procedures for receiving benefits." *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240–41 (5th Cir.1990) (adopting test from *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)); *McDonald*, 60 F.3d at 236; *Meredith*, 980 F.2d at 355; *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir.1991). The Court finds that any rational juror would find that such a plan exists: the benefits provided are described in the EHIC policy; the beneficiaries are Leake & Andersson employees; Leake & Andersson paid 100% of the premiums for enrolled employees; and the procedures for recovering the benefits are explained in the materials given to the employees.[5]

The second task is to determine whether the plan is exempt from ERISA because it falls within the Department of Labor's safe-harbor provisions. Because Leake & Andersson paid the insurance premiums, any rational juror would find that the plan falls outside the safe-harbor provision.[6] *See* 29 C.F.R. § 2510.3–1(j) ("the terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which ... [n]o contributions are made by an employer or employee organization"); *McDonald*, 60 F.3d at 236.

The third task is to determine whether the plan satisfies the primary elements of an ERISA "employee benefit plan." This task requires two inquiries: whether (1) the plan was established or maintained by an employer (2) with the intent to benefit its employees. Any rational juror would find (1) that Leake & Andersson established an ERISA employee benefit plan when it purchased the group insurance from EHIC and selected its terms; (2) that Leake & Andersson maintained the plan by paying the premiums;[7] and (3) that Leake & Andersson took these steps with the intent to benefit its employees. *See* Defendant's Motion for Summary Judgment Exhibit A (Employer Group Application); *McDonald*, 60 F.3d at 236.[8]

---

**5.** Ms. Clancy argues strenuously that no plan exists because, in her view, "the mere act of purchasing insurance coverage" is insufficient to constitute a "plan". Ms. Clancy's argument is premised on *Taggart Corp. v. Life and Health Benefits Administration, Inc.*, 617 F.2d 1208 (5th Cir.1980), in which the Fifth Circuit stated that ERISA does not regulate "bare purchases of insurance where ... the purchasing employer neither directly nor indirectly owns, controls, administers, or assumes responsibility for the policy or its benefits." *Id.* at 1211. Despite this superficially sweeping language, the Fifth Circuit has narrowly construed the *Taggart* opinion. In *Memorial Hospital*, the Fifth Circuit stated that the plan at issue in *Taggart* was not an ERISA plan because an employer-employee-plan relationship was lacking where a lone employee purchased insurance through a Multiple Employer Trust. 904 F.2d at 242–43. *Taggart* is thus factually distinct from the instant dispute. Here, as in *Memorial Hospital*, an employer-employee-plan relationship exists.

**6.** The parties do not disagree over this point. *See* Plaintiff's Opposition to Summary Judgment p. 3 and Defendant's Reply to Plaintiff's Opposition to Summary Judgment p.2.

**7.** Ms. Clancy argues that the plan was neither "established" nor "maintained" by Leake & Andersson because Leake & Andersson merely purchased insurance and paid the premium, but did not otherwise meaningfully participate in creating or administering the plan. This argument is premised on the Fifth Circuit's language in *Hansen*, 940 F.2d at 978, that ERISA requires "some *meaningful* degree of participation by the employer in the creation or administration of the plan". (Emphasis added) While *Hansen* does indeed use the word "meaningful", it does not use it with as much force as Ms. Clancy urges. Read in light of the immediately preceding paragraph, "meaningful" participation means "involvement with the collection of premiums, administration of the policy, or submission of claims", as distinguished from a mere purchase of insurance. *Id.* Here, Leake & Andersson selected the policy and paid 100% of the premiums. For ERISA purposes, this is meaningful participation.

**8.** Ms. Clancy also argues that ERISA does not "apply to health plans because health plans are established and maintained by 'entrepreneurial businesses'—i.e., insurance companies." Plaintiff's Opposition to Summary Judgment p. 22. Ms. Clancy argues that, in

In sum, the Court finds that the EHIC policy at issue is part of an ERISA plan and that Ms. Clancy is a participant in that plan.

### 3. Are Plaintiff's Claims Preempted by ERISA?

Having concluded that Ms. Clancy's EHIC policy is part of an ERISA plan, the Court must now decide whether her claims are preempted by ERISA. For analytical purposes, the Court notes that Ms. Clancy's claims are of two types. First, Ms. Clancy seeks to recover benefits and to obtain a declaration that EHIC is not entitled to reimbursement; these claims are premised on Louisiana Revised Statute 22:663, which states in pertinent part:

> no group policy of accident, health or hospitalization insurance, or of any group combination of these coverages, shall be issued by any insurer doing business in this state which by the terms of such policy group contract excludes or reduces the payment of benefits to or on behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance for the same claim determination period. Any group policy provision in violation of this section shall be invalid.

Second, Ms. Clancy seeks penalties and attorney's fees based on Louisiana Revised Statute 22:657, which provides in pertinent part:

> All claims arising under the terms of health and accident contracts issued in this state ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent

businessman on his guard, exist. . . . Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court.

These two sets of claims require separate analysis.

### a. Claims for Benefits and for Clarification of Rights and the Exhaustion Requirement.

Although Ms. Clancy did not frame her Petition in ERISA terms, EHIC argues that Ms. Clancy nonetheless brought an ERISA claim in asserting entitlement to medical benefits under an ERISA-regulated plan. In EHIC's view, "[t]hese claims not only relate to an ERISA-regulated plan, they fall directly within the enforcement provisions of ERISA § 502". Defendant's Memorandum in Support of Summary Judgment pp. 13, 14. In other words, EHIC claims that Ms. Clancy's cause of action for recovery of benefits and clarification of her rights is preempted by ERISA's civil enforcement provision. In opposition, Ms. Clancy argues that ERISA does not preempt Louisiana Revised Statute 22:663 because it is a law that regulates insurance and is therefore saved from preemption under ERISA's insurance "saving clause". Consequently, argues Ms. Clancy, "any reimbursement/subrogation/coordination of benefits provisions contained within the [EHIC] policy that are violative of the statute are deemed stricken, and Employers Health is obligated to pay benefits as provided by Louisiana law." Plaintiff's Opposition to Summary Judgment p. 28. As befits a complicated question of ERISA preemp-

---

enacting ERISA, Congress did not intend to protect insurance companies, and a finding that the EHIC policy is an ERISA plan would, in fact, serve to protect an insurance company. By definition, however, an employee welfare benefit plan may be established through the purchase of health insurance, providing

the other ERISA requirements are met. *See* ERISA § 3(1) (an ERISA plan may be established or maintained "through the purchase of insurance or otherwise"). This definition does not change depending on which party to a lawsuit arguably benefits from a finding that an ERISA plan exists.

tion,[9] both arguments contain elements of truth, but both are incomplete.

■ As a preliminary matter, the Court agrees with Ms. Clancy that ERISA does not preempt Louisiana Revised Statute 22:663. Although La. R.S. 22:663 clearly "relates to" an employee benefit plan, and thus falls under ERISA's preemption clause, § 514(a), it is similarly clear that La. R.S. 22:663 is a law that "regulates insurance" and thus escapes preemption as to the plan at issue under the saving clause, § 514(b)(2)(A). This is because the plan at issue is insured rather than self-funded.[10] The Court's finding that ERISA does not preempt La. R.S. 22:663 as to this plan does not end the story, however, as the Court is convinced that La. R.S. 22:663 supplies only the rule of decision for Ms. Clancy's claim, which is, in reality, a claim under ERISA § 502(a).

■ ERISA § 502(a) provides, *inter alia*, that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". It is eminently clear that Ms. Clancy's claims under La. R.S. 22:663 are of the nature contemplated by this section. What is not so clear,

however, is whether ERISA provides "the sole launching ground for an ERISA enforcement action." *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 1391, 143 L.Ed.2d 462 (1999).

In *UNUM Life Insurance Co. of America v. Ward*, UNUM Life Insurance Company, the insurer of an ERISA plan, denied a participant's claim for disability benefits because the participant failed to file his claim in a timely fashion. California insurance law, however, provides that late notice shall not preclude an insured's claim for benefits absent proof that the insurer suffered actual prejudice because of the delay. Before the Supreme Court UNUM asserted, among several arguments, that ERISA preempts California's "notice-prejudice" rule and that ERISA's civil enforcement provision (§ 502(a)) preempts any action for plan benefits brought under state rules such as notice-prejudice. In the Supreme Court's words, UNUM argued that § 502(a) provides the "sole launching ground for an ERISA enforcement action." *Id.*

In deciding *UNUM*, the Supreme Court first held that California's notice-prejudice rule is a state law that "regulates insurance" and, therefore, applied to plaintiff's claim against the insurer of an ERISA

**9.** *See, e.g., Pilot Life Ins., Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) ("Given the 'statutory complexity' of ERISA's three preemption provisions, as well as the wide variety of state statutory and decisional law arguably affected by the federal pre-emption provisions, it is not surprising that we are again called on to interpret these provisions.") (internal citation omitted).

**10.** Ms. Clancy correctly notes that the Supreme Court's decision in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), compels this finding. In *FMC*, the Court held that ERISA preempted Pennsylvania's anti-subrogation statute as to a self-funded plan, but stated that "employee benefit plans that are insured are subject to indirect state insurance regulation." *Id.* at 61, 111 S.Ct. at 409. *See also Sunbeam–Oster Co., Inc. Group Benefits Plan for Salaried and Non–Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1369 (5th Cir.1996) (stating, in a case involving a self-funded

ERISA plan, "it is well established that state subrogation doctrines are preempted under ERISA"); *PM Group Life Ins. Co. v. Western Growers Assurance Trust*, 953 F.2d 543, 545–46 (9th Cir.1992) (stating that "[s]tate insurance regulation of insured plans is permissible", but holding that ERISA preempts California's coordination of benefits provision as to self-funded plans); *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1355 (11th Cir.1998) (holding that ERISA preempts a state's anti-subrogation law if the ERISA plan is self-funded). *Accord UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (ERISA does not preempt state law regulating insurance as to insured ERISA plan). The plan at issue in this case is clearly insured and is thus subject to indirect regulation by Louisiana insurance law. This Court disagrees with the Louisiana Appellate Court's cursory treatment of this issue in *Talley v. Enserch Corp.*, 589 So.2d 615 (La.Ct.App. 1991).

plan. Because the plaintiff sued under § 502(a)(1)(B) "to recover benefits due ... under the terms of his plan", however, the Court declined to address UNUM's argument that § 502(a) provides the sole launching ground for an ERISA enforcement action. Nonetheless, the Court described the California law as supplying "the relevant rule of decision for this § 502(a) suit". 119 S.Ct. at 1391. The Court further noted that, in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), it had agreed with the Solicitor General that § 502(a) provides the exclusive remedy for enforcing ERISA. *Id.* at n. 7.

▉ Based on the *UNUM* Court's description of state law as a "relevant rule of decision" for a § 502(a) claim and the *UNUM* Court's reference to its statements in *Pilot Life* that § 502(a) provides the exclusive remedy for enforcing ERISA, this Court concludes that Ms. Clancy's claims for medical benefits and a declaratory judgment should have been brought under ERISA § 502(a) and that Louisiana Revised Statute 22:663 simply provides the relevant rule of decision for her claims.[11] This conclusion comports with prior Fifth Circuit jurisprudence that, "when benefi-

ciaries seek to recover benefits from a plan covered by ERISA, their exclusive remedy is provided by ERISA, in [§ 502(a)(1)(B)]". *Hansen,* 940 F.2d at 979 ("this Court has held that claims to recover benefits or for improper handling of insurance claims are barred by ERISA's preemption provision").

This conclusion is further reinforced on the facts of this case because La. R.S. 22:663 does not itself provide a separate cause of action for recovery. Rather, by the plain wording of the statute, La. R.S. 22:663 simply invalidates any inconsistent policy provision, thereby striking it from the insurance contract. Thus, to the extent that Louisiana law provides a remedy for an insurer's failure to pay benefits owed under an insurance policy, it would do so through a cause of action for breach of contract. As the Supreme Court held in *Pilot Life,* standard breach of contract claims are of general application and thus are not saved from ERISA preemption.[12]

In sum, the Court finds that Ms. Clancy's claims for benefits allegedly due her and for a declaratory judgment are preempted by ERISA § 502(a). Accordingly, these claims are subject to ERISA's exhaustion requirement.

---

11. In so holding, the Court rejects Ms. Clancy's argument that ERISA § 502(a) does not preempt her state law cause of action. Ms. Clancy correctly notes that the Supreme Court has yet to decide whether ERISA § 502(a) provides the exclusive remedy for an enforcement action. However, this Court disagrees with her interpretation of the Supreme Court's signal in footnote 7 of the *UNUM* decision. In footnote 7, the Supreme Court summarized the Solicitor General's position as *amicus curiae.* Although the Solicitor General had argued in *Pilot Life* that § 502(a) provides the exclusive remedy, the Solicitor General "endeavored to qualify" this argument in *UNUM* by asserting that ERISA does not preempt a state cause of action or remedy provided by a state law that regulates insurance. 119 S.Ct. at 1391, n. 7. Ms. Clancy believes the inclusion of this argument indicates that the Supreme Court has accepted this argument. For the reasons stated above, however, the Court rejects this argument.

This Court also rejects Ms. Clancy's argument that it is bound by the Solicitor Gener-

al's arguments in the *UNUM* case. Although reviewing courts often must defer to an agency's construction of a statute it is administering, *see, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), it need not defer to the government's interpretation in a litigation context, especially when this interpretation arguably conflicts with past cases and the agency's own prior arguments. *See, e.g., Bowen v. Georgetown Univ., Hosp.,* 488 U.S. 204, 212, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Indeed, if deference were automatic, there would be no need for the judiciary whenever an agency was charged with administering a statute.

12. Thus, even if the Court were to accept the Solicitor General's argument that ERISA § 502(a) does not preempt a state insurance law that provides a state law cause of action or remedy, such an argument would be inapplicable to the facts of this case.

It is well established that a potential plaintiff generally must exhaust the administrative remedies provided by an ERISA plan before resorting to the federal courts. *See Denton v. First Nat'l Bank of Waco, Texas,* 765 F.2d 1295, 1303 (5th Cir.1985) (adopting exhaustion requirement); *Hager v. NationsBank N.A.,* 167 F.3d 245, 247 (5th Cir.1999); *Hall v. National Gypsum Co.,* 105 F.3d 225, 231 (5th Cir.1997); *Medina v. Anthem Life Ins. Co.,* 983 F.2d 29, 33 (5th Cir.1993) (stating that "we have fully endorsed the prerequisite. of administrative remedies in the ERISA context" and collecting cases).[13] EHIC contends that Ms. Clancy's claims should be dismissed because Ms. Clancy failed to appeal the denial of the claims that are the subject of this suit. In opposition, Ms. Clancy argues that she was not required to avail herself of EHIC's appeals procedure.

Ms. Clancy's EHIC policy contains the following "Claim Appeal Procedure":

> If We partially or fully deny a claim for benefits submitted by You, and You disagree or do not understand the reasons for the denial, You may appeal this decision. You have the right to:
>
> 1. Request a review of the denial;
> 2. Review pertinent plan documents; and
> 3. Submit in writing, any data, documents or comments which are relevant to Our review of this denial.
>
> Your appeal must be submitted in writing within 60 days of receiving written notice of denial. We will review all information and send written notification within 60 days of Your request.

Defendant's Motion for Summary Judgment Exhibit C p. 63 (The Summary Plan Description); Plaintiff's Response to Request for Admissions No. 14 (admitting that the preceding quotation accurately reflects the language contained within the Certificate of Insurance).

Ms. Clancy admits that she did not "appeal the denial of the claims that are the subject of this suit" and that she did not "exhaust the administrative remedies available to her under the Employers Health Insurance Company group health insurance policy." Plaintiff's Response to Request for Admissions Nos. 20–21. Ms. Clancy denies, however, that she was required to do so. *Id.* No. 15 (denying that she was required to appeal any claim denial within 60 days of written notice of the denial of her claim). Ms. Clancy emphasizes that the EHIC policy states that the insured "may" appeal the company's decision to deny a claim for benefits and that the policy speaks of the insured's "right" to appeal. Plaintiff's Opposition to Summary Judgment pp. 37–38. Taking these words together, Ms. Clancy argues that she was not required to exhaust her remedies, but rather that it was her choice whether to avail herself of the policy's appeals process. Ms. Clancy further argues that, "if an ERISA plan fails to mandate use of its appeal procedure then the plan waives any right it may have under the exhaustion of remedies doctrine." *Id.* at 38.

Ms. Clancy's argument fails under the Fifth Circuit's decision in *Denton v. First National Bank of Waco, Texas,* 765 F.2d 1295 (5th Cir.1985). In *Denton,* the Fifth Circuit adopted the ERISA exhaustion requirement originally articulated by the Ninth Circuit in *Amato v. Bernard,* 618 F.2d 559 (1980), and held that the plaintiff was required to exhaust the administrative remedies provided under his plan. Significant for purposes of this controversy, the administrative remedy at issue in *Denton* · stated that "[w]ithin 90 days after receipt of a notice of denial of benefits …, the claimant or his authorized representative

---

13. The exceptions to this rule are extremely limited. *See Hall,* 105 F.3d at 231 (recognizing exceptions to the general rule where resort to administrative remedies is futile or the remedy inadequate); *Denton,* 765 F.2d at 1302 (futility exception). Ms. Clancy does not argue that she falls within these exceptions, but rather argues that the exhaustion requirement does not apply to her for other reasons.

*may* request, in writing, to appear before the retirement committee for a review of his claim." 765 F.2d at 1302 (quoting the policy, emphasis added). The Fifth Circuit also described this provision as affording the claimant "appeal rights". *Id.* at 1303. Thus, it is clear from *Denton* that, prior to bringing suit in federal court, a plaintiff must exhaust the administrative remedy available under an ERISA plan, even if that remedy is phrased in permissive terms.[14]

 Ms. Clancy further attempts to escape the exhaustion requirement by arguing that case law makes a distinction between "contractual interpretation disputes" and "statutory disputes". Plaintiff's Opposition to Summary Judgment pp.38–39. In her view, contractual interpretation disputes are subject to the exhaustion of remedies doctrine, whereas disputes over statutory interpretation are to be decided by the judiciary. Ms. Clancy argues that she was not required to exhaust her administrative remedies because her claims turn solely upon statutory interpretation and cites *Amaro v. Continental Can Co.*, 724 F.2d 747, 751 (9th Cir.1984), *Clouatre v. Lockwood*, 593 F.Supp. 1136, 1138 (M.D.La.1984), and *Greer v. Graphic Communications Intern. Union Offs.*, 941 F.Supp. 1, 3 (D.D.C.1996), for support.

Neither *Amaro* nor *Greer* involved a claim for benefits under an ERISA plan. Instead, both cases involved a violation of a separate protection afforded by ERISA: in *Amaro*, the plaintiffs alleged that they were laid off in violation of ERISA § 510, and in *Greer*, the plaintiff alleged that the plan trustees' rewriting of a plan section was an amendment that reduced his benefits in violation of ERISA § 204(g)(1) and (h). Ms. Clancy's suit, however, is premised on a claim for benefits and, as such, falls within the line of cases that requires exhaustion. *Clouatre* did involve a denial

of benefits, but does not provide Ms. Clancy with any support. Although the district court in *Clouatre* stated that "[u]nless statutorily mandated, the application of the [exhaustion of remedies] doctrine is committed to the discretion of the court", 593 F.Supp. at 1138, *Denton* subsequently held that exhaustion is required. Moreover, the *Clouatre* court also stated that the plaintiff was "not requesting a review of the merits of her case"; rather "[t]he issue in [*Clouatre* was] a determination of whether the remedy for a violation of [ERISA § 503] is the statutory penalty designated by [ERISA § 502(c)]." *Id.* Ms. Clancy is essentially requesting a review of the merits of her case, and, therefore, *Clouatre* is inapplicable even to the extent it has not been overruled by *Denton*.

In sum, Ms. Clancy failed to exhaust her administrative remedies as required by ERISA and *Denton*, and her claims for benefits and for a declaratory judgment, therefore, must be dismissed.

b. *Claims for Penalties and Attorney's Fees.*

 In addition to her claims for benefits and for a declaratory judgment, Ms. Clancy has brought a claim under Louisiana Revised Statute 22:657, which, as set forth above, provides double benefits and attorney's fees when an insurer fails, without just and reasonable grounds, to provide an insured benefits within 30 days of submission of a claim. The Louisiana Supreme Court and numerous courts in this federal district (including this Court) have held that ERISA preempts La. R.S. 22:657. *See, e.g., Cramer v. Association Life Ins. Co.*, 569 So.2d 533 (La.1990); *Hicks v. CNA Ins. Co.*, 4 F.Supp.2d 576, 579 (E.D.La.1998) (Fallon, J.); *Taylor v. Blue Cross/Blue Shield of New York*, 684 F.Supp. 1352 (E.D.La.1988) (Schwartz, J.); *Gulf South Med. & Surgical Inst. v. Gils-*

---

**14.** This reading of the language of *Denton* also comports with the policies articulated therein: upholding Congress' desire that ERISA trustees (not federal courts) be responsible for their actions; providing a sufficiently

clear record of administrative action if litigation should ensue; and assuring that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo. *Id.* at 1300.

bar, Inc., 1993 WL 165685 (E.D.La.1993) (Clement, J.); *Hawthorne v. Principal Mut. Life Ins. Co.*, 1999 WL 486902 (E.D.La.1999) (Porteous, J.); *Russo v. United States Life Ins. Co.*, 1999 WL 102744 (E.D.La.1999) (Duval, J.); *Wellness Aerobic & Sports Med. Clinic, Inc. v. Mutual of Omaha Co.*, 1998 WL 690925 (E.D.La.1998) (Lemelle, J.); *Johnson v. Harvey*, 1998 WL 596745 (E.D.La.1998) (Vance, J.). *See also Lee v. Sun Life Assurance Co. of Canada*, 20 F.Supp.2d 983 (M.D.La.1998); *Coles v. Metropolitan Life Ins. Co.*, 837 F.Supp. 764 (M.D.La. 1993). Not surprisingly, EHIC relies on these precedents to argue that this Court should again find that ERISA preempts La. R.S. 22:657.

Ms. Clancy, however, argues that the Supreme Court's decision in *UNUM Life Insurance Company of America v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), discussed above, has significantly changed the playing field such that this Court should find La. R.S. 22:657 saved from preemption. Essentially, Ms. Clancy makes two arguments. First, she argues that La. R.S. 22:657 is more like the notice-prejudice rule saved from preemption in *UNUM* than Mississippi's law of bad faith found preempted in *Pilot Life*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39. In Ms. Clancy's view, the *UNUM* decision clarified the case law and compels this finding. Second, Ms. Clancy stresses the significance of the Solicitor General's argument, set forth in footnote 7 of the *UNUM* decision, that ERISA does not preempt a state cause of action or remedy provided by a state law that regulates insurance.

The Court agrees with EHIC's position that *UNUM* does not represent the great sea change that Ms. Clancy believes it to be. First, the Supreme Court applied the same test for preemption in *UNUM* that it had applied in *Pilot Life* and *Metropolitan Life*: in determining whether the state law at issue "regulated insurance" and was thereby saved from preemption, the Court first looked to the "common sense" understanding of the term, then applied the three McCarran–Ferguson factors to determine whether the state law fit within the "business of insurance". 119 S.Ct. at 1386. This test had been established well before the decisions by the Louisiana Supreme Court and the federal district courts noted above. Thus, *UNUM* does not require this Court to re-apply the *Pilot Life / Metropolitan Life* test to La. R.S. 22:657.

Ms. Clancy's second argument, that *UNUM* predicts a future holding by the Supreme Court that ERISA does not preempt a state cause of action or remedy provided by a state law that regulates insurance, is engaging but, in this Court's opinion, premature. As the Court noted above, *see supra* note 11 and accompanying text, it does not believe that footnote 7 of the *UNUM* decision indicates that the Supreme Court has adopted the Solicitor General's position; to the contrary, the Court reads footnote 7 as reinforcing the Supreme Court's holding in *Pilot Life* that § 502(a) provides the exclusive remedy for ERISA enforcement. Regardless of the true import of footnote 7, however, the *UNUM* decision does not affirmatively change any precedent, and the Court finds no reason to depart from established precedent at this time.[15]

Thus, based on prior precedent, the Court finds that ERISA preempts Louisiana Revised Statute 22:657. Ms. Clancy's claims for penalties and attorney's fees, therefore, must be dismissed.

---

**15.** Even if the Supreme Court were to hold that ERISA does not preempt a state cause of action or remedy provided by a state law that regulates insurance, this Court believes that Ms. Clancy's claim under La. R.S. 22:657 is nonetheless premature. As the District Court recognized in *Taylor*, a cause of action under La. R.S. 22:657 for a wrongful delay in making insurance payments depends on a finding that the insurer breached a policy obligation. *See Taylor*, 684 F.Supp. at 1353. Ms. Clancy has not exhausted her administrative appeal, therefore a finding of wrongful delay would be premature.

#### 4. *Conclusion.*

The Court finds, as a matter of law, that the EHIC policy is part of an ERISA plan and that Ms. Clancy participated in that plan; that Ms. Clancy failed to exhaust her administrative remedies as required to recover benefits or clarify her rights; and that ERISA preempts Louisiana Revised Statute 22:657. Therefore, the Court grants EHIC's summary judgment motion and dismisses Ms. Clancy's claims.

### B. *DEFENDANT'S MOTION TO DISMISS ITS COUNTER-CLAIM.*

On May 13, 1999, this Court granted EHIC leave to file a counter-claim against Ms. Clancy. In the counter-claim, EHIC asserted, under ERISA § 502(a)(3)(B) and the terms of the policy, an entitlement to $19,350.23 it paid in medical expense benefits to or on behalf of Ms. Clancy for treatment of injuries she sustained in the September 28, 1995 accident. EHIC also requested reasonable attorney's fees and costs pursuant to ERISA 502(g)(1). In its Motion to Dismiss this Counter-claim, EHIC informs the Court that it has waived its claim for reimbursement and authorized the release of the $19,350.23 to Ms. Clancy, thereby mooting the counter-claim. Ms. Clancy has not filed an opposition to this motion, and the Court finds no prejudice to her in dismissing the counter-claim. Thus, pursuant to Federal Rule of Civil Procedure 41(a)(2), the Court grants EHIC's Motion to Dismiss its Counter-claim.

### C. *CLASS ACTION MOTIONS.*

In accordance with the requests set forth in her Petition, Ms. Clancy has moved the Court to certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(c)(1) and Local Civil Rule 23.1. Ms. Clancy states that she wishes to bring suit "on behalf of a class of persons who, within the ten year prescriptive period, submitted bona fide claims to Employers Health but had payment of benefits denied or had payment of benefits reduced due to the existence of alternative coverage provided them through an individually underwritten contract or plan of insurance." Plaintiff's Memorandum in Support of Class Certification p. 4.

The Court finds that class certification is improper. First, because the Court has dismissed Ms. Clancy's claims, it finds her motion for class certification to be moot. *See, e.g., White v. Diamond Motors, Inc. d/b/a Diamond Nissan,* 962 F.Supp. 867, 868 n. 2 (M.D.La.1997) ("since the Court has granted defendants' motions for summary judgment, the class action issue is now moot"); *Tuchman v. DSC Communications Corp.,* 818 F.Supp. 971, 973 (N.D.Tex.1993) (denying plaintiff's motion for class certification as moot because all of plaintiff's causes of actions were dismissed); *Broussard v. South Central Bell,* 1992 WL 96304 (E.D.La.1992) (McNamara, J.) (denying motion for class certification as moot following dismissal of petition on summary judgment). Second, even if the motion were not moot, the Court finds that the reasons for granting summary judgment make it clear that Ms. Clancy is not a proper class representative under Federal Rule of Civil Procedure 23(a)(4): Ms. Clancy's failure to exhaust the available administrative remedies creates a defense to her claim "not present for the putative class members that would be unique and reasonably expected to consume a significant portion of the litigant[s'] time and energy." *Malbrough v. State Farm Fire & Cas. Co.,* 1997 WL 159511 at *2 (E.D.La.1997) (Lemelle, M.J.), *adopted* 1997 WL 289388 (E.D.La.) (Berrigan, J.); *McNichols v. Loeb Rhoades & Co.,* 97 F.R.D. 331, 334 (N.D.Ill.1982) ("where the representative party is subject to unique defenses his claim is not typical of the class"). Accordingly, Ms. Clancy's Motion for Class Certification is denied.

Because the Court finds that Ms. Clancy's claims should be dismissed and because the Court has denied Ms. Clancy's Motion for Class Certification, the Court denies Defendant's Motion for Relief Pursuant to Rule 23(d)(4), and Defendant's

Motion for Protective Order and/or Alternatively Motion to Stay Class Discovery as moot.

D. *CONCLUSION.*

IT IS ORDERED that Defendant's Motions for Summary Judgment and to Dismiss its Counterclaim are GRANTED and Plaintiff's claims are DISMISSED. IT IS FURTHER ORDERED that Plaintiff's Motion for Class Certification, Defendant's Motion for Relief Pursuant to Rule 23(d)(4), and Defendant's Motion for Protective Order and/or Alternatively Motion to Stay Class Discovery are DENIED.