**Julio C. ARANA**

v.

**OCHSNER HEALTH PLAN, INC.**

No. CIV. A. 00–1064.

United States District Court,
E.D. Louisiana.

March 13, 2001.

George Davidson Fagan, Piper Dinita Griffin, Karen M. Dicke, Andrea D. Gilland, Leake, Andersson & Mann, LLP, New Orleans, LA, for Plaintiff.

Perry Roger Staub, Jr., Michael Warren Hill, Taggart, Morton, Ogden, Staub, Rougelot, Brocato & O'Brien, New Orleans, LA, for Defendant.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that Ochsner Health Plan, Inc.'s "Motion to Dismiss Pursuant to Rule 12(b)(6) or, Alternatively, Motion for Summary Judgment" is **DENIED.** (Document # 43.)

**IT IS FURTHER ORDERED** that Julio C. Arana's motion for partial summary judgment declaring that Ochsner Health Plan, Inc. has no subrogation claims against Arana under the United Fire & Casualty Company policy is **GRANTED.** (Document # 75.)

## I. BACKGROUND

On July 5, 1998, Julio C. Arana was seriously injured in an automobile accident when a 1996 Ford Crown Victoria struck the rear of a 1995 Nissan Pathfinder, operated by Arana and owned by his mother, Odette LeCler. Arana is included as a "dependent insured" in the Ochsner Health Plan Inc.'s (Ochsner) group health insurance plan,[1] a fully insured plan, established by LeCler Printing Company, Inc. Ochsner assumed responsibility for the health care services required as a result of the accident.[2]

Coverage for the accident was available under four individually underwritten insurance policies. Arana's mother and stepfather, Emile J. LeCler had in force uninsured motorist coverage of $500,000 with Fireman's Fund Insurance Company and excess uninsured and/or with United Fire in the amount of $2,000,000, subject to $650,000 in underlying limits. Fireman's Fund paid Arana $487,500, and Arana entered into a settlement agreement with United Fire in November 2000 in case No. 98–2927 in the Eastern District of Louisiana.[3] State Farm, which insured the Crown Victoria involved in the accident, settled with Arana for its $100,000 policy limit. Allstate paid a $50,000 limit under a policy issued to the non-owner operator of the Crown Victoria.

Ochsner administers its subrogation rights through Subro Audit, Inc., a third-party contractor and subrogation specialist. On November 2, 1998, Subro Audit informed Odette LeCler that Ochsner sought to obtain reimbursement of the medical expenses paid on Arana's behalf from Fireman's Fund, United Fire, or any

---

1. Arana is covered under Ochsner's Total Health Choice 2–50 Health Service Agreement (a program for employers with two to fifty employees). Ochsner offers two additional Health Services Agreements: Total Health 65 and Total Health One-all.

2. The total charges amounted to approximately $180,000.

3. Arana's motion is limited to subrogation as to the United Fire uninsured coverage.

other insurer under a subrogation and reimbursement provision of the Ochsner plan.

Arana disputed Ochsner's right to pursue recovery and filed a petition for damages in the 24th Judicial District Court for the Parish of Jefferson on his own behalf and on behalf of similarly situated individuals against whose recovery Ochsner has filed liens. Ochsner removed the case to federal court, asserting that any claims arising under the policy are governed by the Employers Retirement Insurance Security Act (ERISA), which preempts the state law claims. Arana alleges that Ochsner has no right to seek subrogation or reimbursement against Arana, Fireman's Fund, or United Fire and requests declaratory judgment that the provisions of the policy violate La.Rev.Stat. 22:663 and 22:2006(7).[4]

Ochsner filed a motion to dismiss and, alternatively, for summary judgment. Ochsner's motion focuses on three issues: whether ERISA preempts La.Rev.Stat. 22:663, whether La.Rev.Stat. 22:663 prohibits the defendant from claiming subrogation, and whether Arana failed to exhaust the administrative remedies provided by an ERISA plan before filing suit.[5] Arana filed a motion for partial summary judgment on the issue whether Ochsner has a right under Louisiana law to pursue subrogation and reimbursement for medical expenses that it paid on behalf of Arana from any amount received by Arana under the United Fire policy.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir.1991); Fed.R.Civ.P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. Failure to exhaust administrative remedies

Ochsner asserts that Arana's claims should be dismissed because he has failed to exhaust the administrative remedies outlined in the plan prior to seeking judicial review of his claims.

"[C]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir.2000). The policy behind the exhaustion requirement includes Congress' desire that ERISA trustees be responsible for the actions of plan administrators and that there be a clear record of administrative action. *Id.* at n. 4.

---

4. La.Rev.Stat. 22:663 is made applicable to HMO's through La.Rev.Stat. 22:2006(7).

5. Arana's claims for unfair trade practices under La.Rev.Stat. 51:1401 *et. seq.* have been withdrawn.

Section 14 of the Ochsner plan provides:

> **Exhaustion of Administrative Remedies.** No action at law or in equity may be brought in connection with a dispute between O/SCHP[6] and a Member until that Member has made a written claim to O/SCHP and exhausted the remedies of the grievance procedure established by O/SCHP.

Article XI, section 2 of the plan addresses the Grievance Procedure established to address claims of wrongful denial of benefits:

> Grievances regarding other (non MM[7]) matters are pursued through the general O/SCHP Member Grievance Procedure. The provisions of this general O/SCHP Member Grievance Procedure are set forth in Section 4 of "Additional Important Information." . . . .

Section 4 of "Additional Important Information" provides a grievance procedure for non-MM related matters. Section 4(h) relates to "Administrative Related Procedures":

> If you have a concern, problem or complaint that is administrative in nature, which means that it involves administrative matters, administration procedures or other non-benefit related matters, and does not involve benefit denial claims or disenrollment grievances, you should put it in writing and direct it to the Members Services Department. . . .
>
> The Manager of Member Services will present your administrative concern, problem or complaint to the Executive Committee for review in accordance with the Committee's established procedures and guidelines.
>
> The Executive Committee will furnish its decision on review to the Manager of Member Services, who will then notify you, in writing, of the decision rendered.

Ochsner has clearly delegated the subrogation and reimbursement procedures to Subro Audit, rather than the Manager of Member Services. Subro Audit gave Odette LeCler and United Fire formal notice of Ochsner's alleged contractual recovery rights on November 2, 1999. Counsel for Arana responded that Ochsner has no right to coordinate benefits or seek subrogation or reimbursement under Louisiana law. Subro Audit responded that La.Rev. Stat. 22:663 is not an anti-subrogation statute and that Arana must reimburse Ochsner for the benefits paid if he recovers from a "tortious party" and/or the insurer. Arana did not receive notice of a process to appeal the decision of Subro Audit, and there is no evidence that Ochsner has provided an appeal process for "non-benefit related" subrogation decisions delegated to Subro Audit. Accordingly, to the extent that Arana was required to exhaust administrative remedies, Arana's communication with Subro Audit constitutes exhaustion of available administrative remedies. Ochsner's motion for summary judgment on this issue is denied.

## C. Preemption of § 22:663

■ Ochsner asserts that the case is governed by ERISA and that Arana is not entitled to relief under La.Rev.Stat. 22:663 because ERISA preempts state law claims.[8] Ochsner contends that Arana's

---

6. Ochsner/Sisters of Charity Health Plan.

7. Medical Management (MM) is defined in Article I:

   (ff) The screening techniques used by the Medical Management Department to insure the Medical Necessity and Appropriateness of a selected procedure or other health service based on O/SCHP approved criteria and to provide for an enhanced matching of Member's needs and location of service.

8. For purposes of this motion, Arana concedes that the employee benefit plan is regulated by federal law under ERISA.

claims directly relate to Ochsner's administration and enforcement of the Group Health Services Agreement, an ERISA-governed plan; therefore, Arana's request for a declaration that the plan violates § 22:663 should be dismissed.

■ ERISA § 502(a) provides that a participant may bring a civil action "to recover benefits due to him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 502(a) provides the exclusive remedy for enforcing ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987).

■ "ERISA's preemption clause dictates that ERISA 'shall supersede any state causes of action insofar as they may now or hereafter relate to any employee benefit plan.'" *Dowden v. Blue Cross & Blue Shield of Tex., Inc.,* 126 F.3d 641, 643 (5th Cir.1997) (quoting 29 U.S.C. § 1144(a)). "A state cause of action relates to an employee benefit plan whenever it has a connection with or reference to such a plan." *Id.* (internal quotation and citation omitted). However, ERISA provides that regulation of the business of insurance is returned to the states:

> The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

*FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990).

The Supreme Court has "repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A)." *See UNUM Life Ins. Co. of America v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 1390, 143 L.Ed.2d 462 (1999). A contrary interpretation would effectively read the savings clause out of ERISA. *Id.*

Ochsner argues that § 22:663 does not prohibit subrogation and that Arana is attempting to read into that statute an anti-subrogation prohibition. Ochsner maintains that the intent of the legislature was to prohibit the "coordination of benefits" or the denial or limitation on the payment of benefits by health carriers on the basis that the insured may also be covered under a plan of individually underwritten insurance. Ochsner asserts that the statute is not implicated in this case because it paid all covered medical expenses arising out of the accident and that it did not "coordinate benefits" on the "front end" with any other individually underwritten contract or plan in violation of § 22:663.

Arana argues that Ochsner's policy violates § 22:663 by excluding or reducing coverage by recouping any recovery received by him under the individually underwritten United Fire policy. Arana contends that the provisions on subrogation and assignment of rights in Article X of the policy are invalid because Ochsner cannot recover on the "back end" for the payment of benefits it could not have excluded or reduced in the first place under the prohibition of § 22:663.

The statute states in relevant part:

> [N]o group policy of accident, health or hospitalization insurance, or of any group combination of these coverages, shall be issued by any insurer doing business in this state which by the terms of such policy group contract excludes or reduces the payment of benefits to or on

behalf of an insured by reason of the fact that benefits have been paid under any other individually underwritten contract or plan of insurance for the same claim determination period. Any group policy provision in violation of this section shall be invalid.

La.Rev.Stat. 22:663 is a law that "relates to" an employee benefit plan. Further, § 22:663 is a law that "regulates insurance. *See Clancy v. Employers Health Insurance Co.*, 82 F.Supp.2d 589, 596 (E.D.La. 1999). Because the Ochsner plan is insured, not self-funded, the statute regulating insurance escapes complete preemption under the saving clause. *Id.* & n. 10; *see also FMC Corp.*, 111 S.Ct. at 409 (employee benefit plans that are insured are subject to indirect state insurance regulation"). Accordingly, Arana's action is brought under § 502(a) of ERISA, and La.Rev.Stat. supplies the "rule of decision" for the claim.[9] *See Clancy*, 82 F.Supp.2d at 597.

■ The prohibition of § 22:663 applies when a group policy insurer reduces benefits by the amount paid by the individual policy insurer. *See Nolan v. Golden Rule Ins. Co.*, 171 F.3d 990, 993 (5th Cir. 1999). "The intent of the legislature was to prohibit coordination of benefits where individually underwritten and group insur-

ance policies are involved." *Talley v. Enserch Corp.*, 589 So.2d 615, 622 (La.Ct.App. 1991) (citing *Ermert v. Union Labor Life Ins. Co.*, 339 So.2d 927, 929 (1976)) (agreeing with the trial court that plaintiff was not entitled to reimbursement from both policies because both of the policies were group policies).

■ Ochsner seeks to reduce the group plan benefits it paid by the amounts paid under the individually underwritten uninsured motorist policy issued by Fireman's Fund, the excess uninsured and/or underinsured motorist coverage from United Fire, and any other insurer. It is clear from the language of the statute that the legislature intended to prohibit such a reduction in benefits in insurance contracts. Section 22:663 specifically imposes the prohibition when benefits are paid under "any other individually underwritten contract," as opposed to payments under other group plans. Further, there is no language limiting the prohibition to the "front end" time frame in which the group health plan is paying its benefits. Therefore, the provision of the group policy requiring subrogation of rights under an individually underwritten policy is invalid under § 22:663.[10] *See Peters v. Prudential Ins. Co. of America*, 511 So.2d 37, 39 (1987).

---

9. Arana's argument that his claim is brought only under state law because it is not a claim to obtain benefits is unconvincing. Even though the benefits have been paid, Ochsner is attempting to reduce the amount of the benefits paid under the health plan. The claim is brought under § 502(a), and § 22:663 applies because it is saved as a state law that regulates the business of insurance. (Arana conceded for purposes of this motion that the plan is regulated by federal law under ERISA.)

10. Ochsner's argument that the application of § 22:663 will improperly lead to a double recovery has no merit. "Under the 'collateral source' rule [Louisiana] courts permit recov-

ery of damages incurred by a plaintiff which he will never have to pay since they have been paid from another source. A plaintiff in a personal injury action has never been required to pay or show that he is able to pay expenses incurred in order to recover them." *Great Southwest Fire Ins. v. CNA Ins.*, 547 So.2d 1339, 1347–48 (1989). *See also Reichenpfader v. Paccar, Inc.*, 872 F.Supp. 328 (1994) (citing *Hudson v. Thompson*, 422 So.2d 640 (1982)) ("[U]nder Louisiana's 'collateral source' rule, an injured plaintiff's tort recovery is not diminished because of insurance benefits received from sources independent of the tortfeasor's procuration or contribution.").

Accordingly, there are no disputed issues of material fact, and Arana's motion for partial summary judgment declaring that Ochsner has no subrogation claim against Arana under the United Fire policy is granted. Ochsner's "Motion to Dismiss Pursuant to Rule 12(b)(6) or, Alternatively, Motion for Summary Judgment" on the issues whether ERISA preempts § 22:663 and whether § 22:663 prohibits the defendant from claiming subrogation is denied.